**Richmond**

HARRY Y. GAMBLE, JR.

v.

CONSTANCE P. GAMBLE

No. 1726-90-2

Decided June 2, 1992

560

COUNSEL

Peter McIntosh (Michie, Hamlett, Lowry, Rasmussen & Tweel, P.C., on brief), for appellant.

Susan D. White, for appellee.

OPINION

**KOONTZ, C.J.**—By final decree entered on September 21, 1990, the Circuit Court for the City of Charlottesville granted Constance P. Gamble a final divorce on the grounds of desertion and adultery from Harry Yandle Gamble, Jr. The decree further granted Mrs. Gamble a monetary award and spousal support, and ordered Mr. Gamble to convey his interest in the jointly owned marital home to Mrs. Gamble in partial satisfaction of the monetary award. On appeal, Mr. Gamble challenges the monetary and spousal support awards. He does not challenge the grounds for the divorce.

Mrs. Gamble filed her Bill of Complaint on March 16, 1990. On June 27, 1990, the parties presented their evidence before the chancellor *ore tenus*. Thereafter, in letter opinions dated July 20 and August 17, 1990, the chancellor recited the findings of fact upon which the monetary and spousal support awards were granted. These findings of fact are adequately supported by the record.

A detailed recitation of the history of this twenty-six-year marriage is not warranted. At the time the couple separated, June 21, 1989, their two children were adults. Mr. Gamble, who had previously earned a doctoral degree in religious studies, held a teaching position at the University of Virginia. He received a net monthly income of $2,607. Throughout the marriage, Mr. Gamble was the primary source of income for the family. However, Mrs. Gamble, who had previously earned a master's degree in education, held a teaching position in the Albemarle public school system from which she received a net monthly income of approximately $1,870. The chancellor, after determining the separate property of the parties, found that the parties had accumulated the following marital property:

1. Personal Property    - $ 23,194.00 - jointly owned
2. Real Property    - $ 69,713.00 - jointly owned
3. Mrs. Gamble's pension - $ 14,100.00 - owned by Mrs. Gamble
4. Mr. Gamble's pension - $113,674.72 - owned by Mr. Gamble

           Total        $220,681.72

From this marital property and pursuant to Code § 20-107.3, the chancellor granted Mrs. Gamble a monetary award of $32,024.96. To this amount, the chancellor added the amount of $3,500[1] which had previously been awarded to Mrs. Gamble at a *pendente lite* hearing; thus, Mrs. Gamble received a total monetary award of $35,524.96. In partial satisfaction of this award, the chancellor ordered Mr. Gamble to transfer all of his interest in the jointly owned marital home, which was determined to be $34,856.50, to Mrs. Gamble. Mr. Gamble's equity in the home was determined by subtracting the outstanding balance of two mortgages from the value of $135,200 of the home set by the chancellor. Mr. Gamble was ordered to pay the balance of $668.46 within three months of the entry of the decree. Pursuant to Code § 20-107.1, the final decree fixed Mrs. Gamble's spousal support award at $850 monthly beginning August 1, 1990.

On appeal, Mr. Gamble raises the following issues: (1) whether the chancellor erred in setting the valuation of the marital home at $135,200; (2) whether the determination of the amount of the monetary award and the order that Mr. Gamble transfer his interest in the marital home to Mrs. Gamble was an abuse of discretion; and (3) whether the determination of the amount of spousal support was an abuse of the chancellor's discretion.

In addressing these issues, we are able to do so with the benefit of the chancellor's reasoning which is recited in detail in the letter opinions in the record. For clarity, we will refer to this reasoning where each specific issue is addressed in this opinion.

---

[1] While the amount was awarded at a *pendente lite* hearing as spousal support, Mr. Gamble does not assert that the inclusion of this amount in the subsequent monetary award was error. Accordingly, we do not treat that amount as spousal support for purposes of this opinion.

## I. The Valuation of the Marital Home Issue

At the *ore tenus* hearing, Mr. Gamble testified that in his opinion the marital home had an "approximate market value" of $175,000. In support of that opinion, he offered an exhibit which contained what he asserted to be valuations of other comparable properties in the neighborhood. The chancellor rejected this exhibit, but permitted Mr. Gamble to state his belief of the value of the home. In contrast, Mrs. Gamble introduced, without objection, a County of Albemarle tax appraisal reflecting a value of $135,200 for the home as of January 1, 1989. The chancellor found that the tax appraisal "is more satisfactory to establish the value of the residence."

Because neither party filed a motion, pursuant to Code § 20-107.3(A), for the chancellor to use a different valuation date, Mr. Gamble initially asserts that the chancellor was required to determine the value of the marital home as of the date of the evidentiary hearing. We agree. That date was June 27, 1990. On this premise, Mr. Gamble then asserts that because the chancellor adopted the valuation contained in the January 1, 1989 tax appraisal, the chancellor adopted a valuation date other than June 27, 1990, as required by Code § 20-107.3(A). We disagree. It would be mere speculation to conclude that the chancellor after specifically acknowledging the requirements of this Code section would disregard its clear mandate. Moreover, the record does not support such a conclusion.

Nonetheless, Mr. Gamble asserts that Mrs. Gamble offered little, if any, evidence that the value of the home had not increased since the 1989 appraisal. While pictures of the home were placed into evidence, he notes that Mrs. Gamble's only testimony on that point was that there had been little money available for "cosmetic repairs."

In contrast, Mr. Gamble asserts that his opinion of the value of the home was worthy of more weight, in essence, because it was based upon his knowledge of the value of similar homes in the neighborhood and was formulated several days prior to the date of the evidentiary hearing. In addition, he asserts that because the chancellor assigned a "half-way" value to those items of personal property over which the parties disagreed concerning value, the same approach was required for the valuation of the marital

home. We disagree.

■ Upon familiar principles, "we consider the evidence in the light most favorable to the party prevailing in the trial court. Where the trial court's decision is based upon an *ore tenus* hearing, its determination will not be disturbed on appeal unless it is plainly wrong or without evidence in the record to support it." *Schoenwetter v. Schoenwetter*, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989). On brief, Mr. Gamble concedes that "in essence each party in this case was entitled to serve as his or her own expert regarding the valuation of the marital home." Viewed in that context, we cannot conclude that the chancellor was plainly wrong in giving less weight to Mr. Gamble's opinion and more weight to Mrs. Gamble's opinion that the value of the home had not increased since the independent tax appraisal; thus, the chancellor was not plainly wrong in determining that appraisal reflected the value of the home on the date of the evidentiary hearing. Accordingly, we hold that the chancellor did not err in setting the value of the marital home at $135,200.

## II. The Monetary Award Issue

In determining the amount and method of payment of the monetary award in favor of Mrs. Gamble, the chancellor specifically relied upon our decision in *Brinkley v. Brinkley*, 5 Va. App. 132, 361 S.E.2d 139 (1987). This decision outlined the steps to be followed in the application of Code § 20-107.3 prior to the 1988 amendments to this Code section. Mr. Gamble does not contest the classification of the marital property or Mrs. Gamble's entitlement to an award. With the exception of the valuation placed upon the marital home which we have previously addressed and affirmed, he does not contest the valuation of the marital property. Thus, the focus here is upon the amount of the award and the method of payment of that award as determined by the chancellor.

Mr. Gamble asserts a three-pronged argument in support of his position that the amount and method of payment of the monetary award are erroneous. First, Mr. Gamble asserts that by combining pension and non-pension marital property in the calculation of the amount of the monetary award, the chancellor "inequitably allowed [Mrs. Gamble] to enjoy the vast majority of the currently available marital assets and granted to [Mr. Gamble] future, only

potential, benefits of his pension." Next, he asserts that the chancellor erroneously considered Mrs. Gamble's "future psychological, emotional and financial needs for the marital home" in determining the amount of the award and in ordering Mr. Gamble to convey his interest in the home to Mrs. Gamble. Finally, Mr. Gamble asserts that the chancellor misconstrued and misapplied the Code § 20-107.3(E) factors in determining the amount of the award.

The essence of Mr. Gamble's first assertion is that where the amount of the monetary award pursuant to Code § 20-107.3(D) is based or calculated in part on the inclusion of pension benefits but is to be satisfied from non-pension property, Code § 20-107.3(G) limits the chancellor's authority to order satisfaction from non-pension assets until the pension benefits are received by the payor spouse. Specifically, Mr. Gamble argues that the value of his pension benefits was used to determine the amount of the monetary award in favor of Mrs. Gamble and he was required to satisfy that award by transferring his interest in the marital home to her. He argues that this amounts to Mrs. Gamble's receipt of a portion of his pension benefits prior to his actual receipt of those benefits.

In order to focus upon the proper application of Subsection (G) to the factual situation presented by this appeal, we will assume, for now, that the chancellor correctly determined the equities and rights and interests of each party in the pension and non-pension marital property and correctly applied the factors listed in Code § 20-107.3(E) to this property. This assumption is necessary in order to address the relationship between Subsections (D) and (G), which is at the heart of Mr. Gamble's position regarding the monetary award in this appeal.

The chancellor's letter opinions reveal in detail how the amount and method of payment of the monetary award were fashioned. In summary, the chancellor determined that the total value of all of the marital property was $220,681.72. The largest asset was Mr. Gamble's pension, which was valued at $113,674.72. Of the total amount of the marital property, Mr. Gamble owned or had joint title to property worth $160,128.22. Mrs. Gamble owned or had joint title to marital property worth $60,533.50. The chancellor found that "these figures consist of each having a one-half interest in the personalty and the marital residence and sole title to their respective pensions." Based upon these amounts, the chancellor

concluded that, prior to any award, Mrs. Gamble owned twenty-nine percent of the marital property and Mr. Gamble owned seventy-one percent of that property. After considering the Subsection (E) factors, the chancellor determined that Mrs. Gamble would retain all her interest in her pension, her one-half interest in the personalty and the marital home and would receive a monetary award of $32,024.96 pursuant to Subsection (D). This amount was acknowledged to be approximately equal to Mr. Gamble's interest in the marital home.[2] After directing Mr. Gamble to convey his interest in the marital home to Mrs. Gamble and to pay the balance of $668.46 ($35,524.96 less $34,856.50) within three months of the final decree in satisfaction of the monetary award, the chancellor turned to Subsection (G) and addressed Mr. Gamble's pension benefits. The chancellor specifically determined that the Subsection (E) factors would warrant a fifty percent award of Mr. Gamble's pension benefits to Mrs. Gamble. That amount, however, was reduced to twenty percent in order "to offset" the prior consideration of the value of Mr. Gamble's interest in these benefits in making the Subsection (D) monetary award. This twenty percent Subsection (G) award was made payable as the benefits are actually received by Mr. Gamble.

In summary, it is clear that the value of Mr. Gamble's pension benefits was included in the chancellor's determination of the amount of the monetary award granted pursuant to Subsection (D). It is also clear that these pension benefits were considered again under Subsection (G). We must decide whether in fashioning an equitable distribution of the marital property the chancellor caused a portion of Mr. Gamble's pension benefits to be paid, directly or indirectly, prior to his receipt of those benefits in violation of Subsection (G).

In *Keyser v. Keyser*, 7 Va. App. 405, 412, 374 S.E.2d 698, 702 (1988), we noted that "pension plans, by their nature and diversity, present unique problems when making a division of marital wealth under any equitable distribution statute." Similarly, Mr. Gamble correctly asserts that, as a general proposition, pension benefits are an unusual type of property in that, in most cases, the pension benefits are "future oriented." In this context, we note

---

[2] The *pendente lite* spousal support award which is not contested in this appeal accounts for the difference in one-half of the $69,713 equity in the marital home and the final amount of the monetary award of $35,524.96.

that while such benefits are frequently to be realized in the future, they may also represent a large portion of the accumulated marital wealth at the time an equitable distribution award is fashioned. However, while susceptible to valuation, such benefits are not as readily susceptible to valuation or distribution at the time of an evidentiary hearing as is marital wealth reflected in the form of cash, stocks and bonds, other personalty, and real property. For these reasons, pension benefits are treated separately from other marital property under Subsection (G) for purposes of equitable distribution.

The chancellor's task of equitably applying Subsection (G) in conjunction with the other provisions of Code § 20-107.3, however, does not lend itself to a simple mathematical equation. As a result, this Court has been called upon frequently to review the distribution of pension benefits. For instance, in *Mitchell v. Mitchell*, a case relied upon by Mr. Gamble, the chancellor awarded the wife a monetary award based in part upon the present value of the husband's pension benefits. 4 Va. App. 113, 355 S.E.2d 18 (1987). This award was made payable within thirty days of the order, which was prior to the date the husband would actually begin to receive the benefits. At the time *Mitchell* was decided, Code § 20-107.3(E)(8) provided that one factor to be considered in determining the amount of a Subsection (D) monetary award was the "present value" of pension benefits. At that time, Subsection (G) provided, however, that no part of the monetary award based upon the value of pension benefits shall become effective until the benefits are actually received by the payor spouse and the award could not exceed fifty percent of such benefits. For these reasons, in *Mitchell*, we reversed the monetary award and held:

In the event that any part of the monetary award is based upon pension or retirement benefits, Code § 20-107.3(G) provides a limitation upon the method of payment. It places two restrictions upon payment: (1) no part of the award shall become effective until the party against whom such award is made actually begins to receive such benefits; and (2) no such award shall exceed fifty percent of the cash benefits actually received by the party against whom such award is made. *The practical effect of subsection (G) is that the trial judge must specify separately any part of the monetary*

*award that is based upon pension or retirement benefits and make special provisions for the payment of it in order to conform with [these] restrictions.*

We find that [wife's] argument that the trial court could include as a part of the monetary award the present value of pension or retirement benefits without applying the restrictions on payment in subsection (G) to be in error and we reverse the judgment of the trial court since it ordered payment within thirty days of the order rather than when the [husband] actually began to receive such benefits.

*Id.* at 121, 355 S.E.2d at 22-23 (emphasis added). *See also Price v. Price,* 4 Va. App. 224, 233, 355 S.E.2d 905, 910 (1987). Significantly, although Subsection (G) was amended effective July 1, 1985 to permit the trial court to award a percentage of pension benefits, this amendment was not applicable at the time the trial courts decided *Mitchell* and *Price.* Now, however, the "special provisions" for the payment of an award based in part upon pension benefits contemplated in *Mitchell* are an award of a percentage of those benefits pursuant to Subsection (G).

Subsequently, in *Brinkley,* the case relied upon by the chancellor in the present case, we reversed a Subsection (D) award to a wife of a $3,000 lump sum and a Subsection (G) award of an amount equal to thirty-six percent of the husband's pension benefits because the trial court did not follow the statutory scheme in determining whether a monetary award was appropriate, did not determine the present value of the husband's pension benefits in determining the amount of the award, and effectively granted two monetary awards. 5 Va. App. at 137-39, 361 S.E.2d at 141-42. At the time *Brinkley* was decided, unlike *Mitchell,* the 1985 amendment to Subsection (G) providing that the "court may direct payment of a percentage of pension . . . benefits" was applicable. In this context, we held:

Code § 20-107.3, both as it read prior and subsequent to the 1985 amendment, contemplates only one monetary award, the amount of which is determined by the careful consideration of the eleven criteria enumerated in Subsection E. Although Code § 20-107.3(G) as it read prior to its amendment required the trial court to identify that *portion* of the award based upon [pension] benefits, *see Mitchell v. Mitchell,* 4

Va. App. 113, 121, 355 S.E.2d 18, 22 (1987), that provision cannot be construed as authorizing multiple monetary awards. Furthermore, the statute now clearly indicates that *the monetary award is* not composed of discrete parts each based upon one of the enumerated factors, but is rather *a single entity whose total amount is determined by examination of the Code § 20-107.3(E) factors.*

*Brinkley*, 5 Va. App. at 139, 361 S.E.2d at 142 (emphasis, in part, in original and in part added).

Subsequent to *Mitchell, Price* and *Brinkley*, in 1988, the legislature repealed Code § 20-107.3(E)(8) which required the chancellor to determine the "present value" of pension benefits. In addition, Subsection (G) was amended and now provides:

*In addition to the monetary award made pursuant to Subsection D*, and upon consideration of the factors set forth in Subsection E, the court may direct payment of a percentage of the marital share of any pension, profit-sharing or deferred compensation plan or retirement benefits, whether vested or nonvested, which constitutes marital property and whether payable in a lump sum or over a period of time. However, the court shall only direct that payment be made as such benefits are payable. No such payment shall exceed fifty percent of the marital share of the cash benefits actually received by the party against whom such award is made.

(emphasis added). Subsection (G), in this form, was applicable at the time the chancellor decided the present case.

In his initial brief, Mr. Gamble asserts that the phrase, "In addition to the monetary award made pursuant to Subsection D" in the 1988 amendment to Subsection (G) "allowed for the first time separate monetary awards (non-pension and pension) [and] simplified and clarified the restrictions" of this subsection. He further asserts that the 1988 amendments did not legislatively overrule *Mitchell* and *Price*, but rather "were in response to this Court's decision in [*Brinkley*] which had been interpreted to mean a trial court could not make two monetary awards; one a present sum from non-pension marital property and another which adheres to the 'when/as/if' requirements of Subsection G." In his reply brief, Mr. Gamble clarifies his position by stating that he does not con-

tend that two monetary awards must be made if the marital property consists of pension and non-pension property. Rather, he contends only that if the amount of the monetary award is based on the inclusion of pension benefits, Subsection (G) limits payment to when the benefits are actually received. In reply, Mrs. Gamble asserts that the amendment permits two separate monetary awards, if one is a pension award, but two awards are not mandated.

In our view, even if we assume that Subsection (G) was amended "in response to *Brinkley*," this amendment does not alter our holdings in *Mitchell*, *Price* and *Brinkley*. Rather, we believe this amendment and the repeal of the Subsection (E)(8) requirement of consideration of the present value of pension benefits were intended only to clarify what has always been contemplated by the Code § 20-107.3 scheme for equitable distribution of the marital wealth of the parties: *a distribution* which will equitably "compensate a spouse for his or her contribution to the acquisition of [all marital] property obtained during the marriage." *Sawyer v. Sawyer*, 1 Va. App. 75, 78, 335 S.E.2d 277, 279 (1985).

We recognize that where pension benefits are a portion of the pool of marital assets to which all of the provisions of Code § 20-107.3 must be applied, the continuing struggle has been to determine the value of these benefits and to equitably distribute that value without requiring payment before the benefits are received by the payor spouse. *Mitchell*, *Price*, *Brinkley* and the present case are examples of that struggle. The factual situations in each case illustrate what is required to conform an equitable distribution to the mandates of all the provisions of Code § 20-107.3, and specifically to a Subsection (D) monetary award and the limitations of Subsection (G) following the 1988 amendments.

*Mitchell*, for example, represents the clear factual situation in which a Subsection (D) monetary award was defective because the amount of the award was determined in part on the value of pension benefits but was ordered to be paid in violation of Subsection (G) prior to the time the party against whom the award was made actually received the pension benefits. In this context, Subsection (G), prior to and following the 1988 amendment, is a legislative recognition of the obvious: one cannot pay an award with funds he or she does not currently possess. Thus, an order to pay a portion of pension benefits prior to the actual receipt of such bene-

fits continues to be prohibited by this subsection. *Price* represents another factual situation which involved "general pooling of all the marital assets, including the pension [of the husband]." 4 Va. App. at 233, 355 S.E.2d at 910. There we followed *Mitchell* in applying the Subsection (G) limitations to any part of the Subsection (D) monetary award based upon the pension benefits of the husband. In *Mitchell* and *Price*, the spouse against whom the monetary award was made was not currently receiving the pension benefits, and the chancellor did not have the benefit of the 1988 amendment to Subsection (G) specifically permitting the award of a percentage of those benefits to the other spouse.

In *Brinkley*, which like *Mitchell* and *Price*, also involved pension and non-pension marital property, the primary error was that the chancellor failed to consider the Subsection (E) factors in fashioning an equitable distribution of all the marital property. Unlike *Mitchell* and *Price*, in *Brinkley*, the husband was presently receiving his pension benefits and Subsection (G) permitted an award of a percentage of those benefits to the wife. Without considering the Subsection (E) factors, the chancellor made a Subsection (D) monetary award of $3,000 and in addition a Subsection (G) award of thirty-six percent of the husband's pension benefits, which we found effectively amounted to two monetary awards. In this context, we held that Subsection (G) does not authorize multiple awards, but rather "the statute [that is, Code § 20-107.3 in its entirety] now clearly indicates that *the monetary award* is not composed of discrete parts each based upon one of the enumerated factors, but is rather *a single entity whose total amount is determined by examination of the Code § 20-107.3(E) factors.*" *Brinkley*, 5 Va. App. at 139, 361 S.E.2d at 142 (emphasis added). We continue to believe that an equitable distribution of the marital wealth is the mandate of Code § 20-107.3.

Thus, when properly viewed, *Mitchell*, *Price* and *Brinkley* are entirely consistent and stand for the general proposition that where a monetary award is appropriate, the Subsection (E) factors must be considered in determining the total amount of a Subsection (D) monetary award which will equitably compensate a spouse for his or her contributions to the acquisition of all the marital property; and where pension benefits are a portion of that marital property, Subsection (G) permits the chancellor to award a percentage of those benefits conditioned upon the specific limita-

tions of this subsection. The 1988 repeal of Subsection (E)(8) and amendment to Subsection (G) do not alter the holdings of these cases. Instead, the 1988 legislative action clarified the relationship between Subsections (D) and (G), where both are applicable to a particular factual situation. Moreover, these amendments provide a practical guide for the chancellor where pension benefits are a portion of the marital wealth to be equitably distributed. Based upon a consideration of the Subsection (E) factors to all the marital property, the chancellor may make an equitable distribution of the marital wealth by making a Subsection (D) monetary award or a combination of a Subsection (D) monetary award and a Subsection (G) percentage of pension benefits award. Whether the latter is viewed as one or multiple awards, the critical requirement of Code § 20-107.3 is that there be an equitable distribution of the total marital wealth as determined specifically by the Subsection (E) factors. In short, Subsections (D) and (G), where applicable to a particular factual situation, compliment each other and provide the chancellor the practical means to equitably distribute the marital wealth without requiring payment of any portion of that wealth prior to its actual receipt.

In the present appeal, Mr. Gamble's assertion that the award of twenty percent of his pension benefits was in violation of the restrictions of Subsection (G) does not describe to what the chancellor actually ordered. Although Subsection (E)(8) had been repealed, the chancellor had the benefit of the evidence which established the present value of all the pension benefits of the parties, in addition to the value of the non-pension property. Thus, the chancellor was able to and did apply the Subsection (E) factors to all of the marital property and fashioned an equitable distribution of the marital wealth of the parties so that Mrs. Gamble would receive the accumulated wealth represented by the equity in the non-pension property (the marital home) and Mr. Gamble would retain a larger portion of the pension property (eighty percent of his pension benefits).

Contrary to his assertion, Mr. Gamble was not required, directly or indirectly, to pay a portion of his pension benefits to Mrs. Gamble prior to his receipt of those benefits. He was required to satisfy the Subsection (D) award by the transfer of non-pension property — his interest in the marital home and the balance in cash. In return, as an offset, he was required to pay only twenty

percent of his pension benefits to Mrs. Gamble when he actually received those benefits, as required by Subsection (G). An offset in the value of solely owned property of one spouse against the value of other solely owned property of the other spouse or jointly owned property is distinctly different from an order to transfer solely owned property, which is prohibited by Subsection (C). Here, the chancellor did not order the transfer of pension property solely owned by Mr. Gamble to satisfy the Subsection (D) award. Rather, the chancellor reduced the share of property that Mrs. Gamble would otherwise have been entitled to receive as an offset to the jointly owned non-pension property which Mr. Gamble was required to transfer to her. For these reasons, we find no merit to Mr. Gamble's assertion that the chancellor erred in the application of Subsection (G) in this case.

We turn now to Mr. Gamble's assertion that the chancellor erroneously considered Mrs. Gamble's "future psychological, emotional and financial needs for the marital home" in determining the amount of the award and in ordering Mr. Gamble to convey his interest in the home to her. He relies upon our decision in *Reid v. Reid*, 7 Va. App. 553, 375 S.E.2d 533 (1989), to support his assertion. This reliance upon *Reid* is misplaced. In *Reid*, we held that "Code § 20-107.3(E)(11) does not contemplate consideration of earning capacity of one spouse and support needs of the other spouse, which are expressly embodied in Code § 20-107.1 and are more appropriately determined under the latter statute." 7 Va. App. at 565, 375 S.E.2d at 540. *Reid* involved the erroneous mixing of spousal support and equitable distribution considerations. Here, the only "need" of Mrs. Gamble which the chancellor expressly considered under Subsection (E)(11) was her desire to retain the marital home. While the record contains evidence of Mrs. Gamble's "psychological and emotional needs," it also contains evidence that Mr. Gamble planned to leave the country for a year and that he had previously indicated a desire for Mrs. Gamble to retain the marital home. In this context, it was not error for the chancellor to fashion the equitable distribution of the parties' marital wealth in such a way that Mrs. Gamble would retain the marital home and Mr. Gamble would retain a large portion of his pension. Pursuant to Subsection (C), the chancellor had the authority to order the transfer of Mr. Gamble's interest in the jointly owned marital home to Mrs. Gamble.

Finally, we turn to Mr. Gamble's third assertion concerning the monetary award. The chancellor concluded that as a result of the equitable distribution ordered, "Mrs. Gamble's overall percentage of marital property is approximately 54% and Mr. Gamble's is 46%." Mr. Gamble asserts that this division of the marital property is not supported by the evidence and is a result of the chancellor misconstruing and misapplying many of the Code § 20-107.3(E) factors. He asserts error involving all of these factors except factors five, six, nine and eleven. We see no useful purpose in reciting the details of Mr. Gamble's specific assertions with regard to each factor or Mrs. Gamble's assertions in reply. The essence of Mr. Gamble's position is that he made a greater share of the monetary contributions to the well being of the family and the acquisition and maintenance of the marital property over the duration of the marriage than Mrs. Gamble, and his non-monetary contributions were at least equal to those of Mrs. Gamble. The chancellor agreed, but in consideration of several other factors, made an award which resulted in slightly less than an equal division of the marital property.

Our standard of review of this particular issue is well settled. "Code § 20-107.3 contains no presumption favoring equal division of marital property. Moreover, in reviewing an equitable distribution award, we rely heavily on the trial judge's discretion in weighing the particular circumstances of each case. Only under exceptional circumstances will we interfere with the exercise of the trial judge's discretion." *Aster v. Gross*, 7 Va. App. 1, 8, 371 S.E.2d 833, 837 (1988) (citation omitted). Here, the chancellor carefully considered all of the Subsection (E) factors with regard to the particular circumstances of this case and we find no abuse of his discretion in fashioning the award which granted Mrs. Gamble slightly more of the marital property than Mr. Gamble.

For all of these reasons, we affirm the chancellor's decision to grant Mrs. Gamble a monetary award and the amount and method of payment of that award.

## III. The Spousal Support Award Issue

Well-established principles guide our resolution of the spousal support issue in this appeal. Where a claim for support is made by a party who has been held blameless for the marital breach, the law imposes upon the other party a duty, within the

limits of his or her financial ability, to maintain the blameless party according to the station in life to which that party was accustomed during the marriage. In fixing the amount of the spousal support award, a review of all of the factors contained in Code § 20-107.1 is mandatory, and the amount awarded must be fair and just under all of the circumstances of a particular case. *See Ray v. Ray*, 4 Va. App. 509, 513-14, 358 S.E.2d 754, 756-57 (1987). When the record discloses that the trial court considered all of the statutory factors, the court's ruling will not be disturbed on appeal unless there has been a clear abuse of discretion. *Calamos v. Calamos*, 4 Va. App. 96, 100, 354 S.E.2d 102, 105 (1987). We will reverse the trial court only when its decision is plainly wrong or without evidence to support it. Code § 8.01-680.

Mr. Gamble's adultery and desertion and Mrs. Gamble's blamelessness, as determined by the chancellor, readily and adequately support the chancellor's threshold determination pursuant to Code § 20-107.1 that Mrs. Gamble is entitled to a spousal support award. Thus, our focus here is upon the amount of that award, which the chancellor fixed at $850 per month.

While the parties disagree over the appropriate weight to be given to each of the nine statutory factors contained in Code § 20-107.1 based upon the circumstances of this particular case, it is clear that the chancellor considered each factor in determining the amount of the award. Because of the view that we adopt in this appeal, we need not recite the parties' disagreement with regard to each specific factor. Rather, we limit our discussion to those specific factors and the evidence related to them that control our decision concerning the manner in which the chancellor fashioned the final award, and, thus, the amount of that award. In doing so, we again rely upon the chancellor's letter opinions that reveal in detail the manner in which the award was fashioned.

Pursuant to factor one (obligations, needs and financial resources of the parties) the chancellor adjusted the monthly expenses claimed by each party and determined the reasonable anticipated monetary expenses of each party. For purposes of this opinion, except as we note below, we assume that the chancellor correctly made these determinations. The chancellor then determined that Mr. Gamble earned a net monthly income of $2,607 and Mrs. Gamble earned a net monthly income of $1,869.46. Mr. Gamble correctly asserts, however, that in determining Mrs.

Gamble's income, the chancellor did not include the $250 monthly rental income she was currently receiving by renting a portion of the marital home. Mrs. Gamble argues that she was renting a portion of the marital home "in a desperate attempt to maintain the house while awaiting trial" and that "there was no testimony that she would continue to rent part of the home in the event she was awarded adequate support by the trial court."

Clearly, the current income of Mrs. Gamble is one factor that the chancellor is required to consider in fashioning the final spousal support award to her. *See Blank v. Blank*, 10 Va. App. 1, 4, 389 S.E.2d 723, 724 (1990). In setting the spousal support award at $850, the chancellor noted that "such award permits both parties *to come close* to meeting their anticipated monthly expenses." (emphasis added). We interpret this comment to mean that the chancellor was aware that the determination of the net monthly income of both parties was not a precise mathematical calculation. Moreover, we are unwilling to conclude that the chancellor's failure to include Mrs. Gamble's current rental income into the calculation of her net monthly income, standing alone, is necessarily a fatal defect in the manner in which the chancellor fashioned the final award. While no evidence supports Mrs. Gamble's suggestion that this income was temporary, for the reasons that follow, we will treat the failure to consider this income as one of several considerations in our review of the final award.

Another consideration is Mr. Gamble's correct assertion that the $850 award results in Mrs. Gamble having a greater net monthly income than he. Factually, this is the case even without the inclusion of the rental income figure. The chancellor also recognized this result, but found that this "is not determinative of what is or what is not an appropriate award of support." Mr. Gamble suggests "that there are no cases which result in the payee spouse" having a higher net disposable income level than the payor spouse and invites our review of several decisions of the Virginia appellate courts that *factually* support his position. We need not, and do not, decide whether such a result is necessarily a fatal defect in the calculation of a spousal support award. Rather, we will treat the fact that Mrs. Gamble has more net disposable income as a result of the award in her favor as an additional consideration in our review of the final award in this particular case.

Pursuant to factor eight (provisions made with regard to marital property under Code § 20-107.3), the chancellor considered the monetary award and the required conveyance of the marital home to Mrs. Gamble and "the fact that she will be responsible for both the first and second mortgage payments" on that property in the total monthly amount of $881. The record reflects that the first mortgage payment of $372 monthly was an obligation listed on Mrs. Gamble's expense sheet that the chancellor considered in determining her obligations and net monthly income under factor one. Thus, the second mortgage payment of $509 monthly, rather than $881, would have been the maximum amount properly considered by the chancellor under factor eight. Moreover, because Mr. Gamble had previously been making this second mortgage payment, the chancellor necessarily had to have considered that fact when making the adjustment to Mrs. Gamble's monthly expenses under factor one. In short, either Mr. Gamble has less disposable net income than determined by the chancellor because he has not been credited with making the second mortgage payment or Mrs. Gamble has more disposable income than determined by the chancellor because she has been credited with an obligation that she does not have. We need not resolve this apparent conflict, however. Rather, we treat it as another consideration in our review of the final award.

The chancellor's failure to consider Mrs. Gamble's current rental income and to either properly credit Mr. Gamble or to debit Mrs. Gamble with the amount of the second mortgage payment seriously lessens the reliability of the chancellor's determinations of the parties' respective obligations and net incomes. The chancellor's conclusion that the fact that Mrs. Gamble's net income exceeds that of Mr. Gamble was of little significance does not strengthen the reliability of those determinations. When these defects are viewed in their totality, the spousal support award in this case effectively provided the financial means by which Mrs. Gamble could satisfy the monthly mortgage obligations on the marital property she sought and received under the provisions of Code § 20-107.3. Moreover, the chancellor's reasoning leads us to the conclusion that the award was fashioned primarily for that purpose.

In *Williams v. Williams*, 4 Va. App. 19, 24, 354 S.E.2d 64, 66 (1987), and in *Reid*, 7 Va. App. at 564, 375 S.E.2d at 539, we

noted the clear legislative intent embodied in Code §§ 20-107.1 and 20-107.3 to maintain an appropriate separation between considerations of spousal support and considerations of an equitable distribution of marital wealth. In that context, while Code § 20-107.1 requires a chancellor to consider the provisions made with regard to the marital property under Code § 20-107.3, we view that requirement as a practical means by which the chancellor may fix a proper spousal support award in light of the financial result of the monetary award. Thus, for example, income producing property conveyed pursuant to Code § 20-107.3 would alter the needs of one party and the ability of the other party to pay spousal support. This requirement, however, is not an authorization to fix a spousal support award to compensate a spouse further for marital property received pursuant to Code § 20-107.3. In addition, we take this opportunity to note that the requirement that the chancellor consider "the standard of living established during the marriage" pursuant to Code § 20-107.1 is also not an authorization to fix a spousal support award so that the receiving spouse can satisfy outstanding debts on the marital property conveyed to that spouse pursuant to Code § 20-107.3. The outstanding obligations on marital property are properly considered when Code § 20-107.3 determinations are made and the marital wealth is equitably distributed. The same obligations are not to be factored again into the Code § 20-107.1 determination. In short, the appropriate separation between considerations of spousal support and considerations of an equitable distribution of marital wealth prevents a "double dip" by a spouse who seeks and receives encumbered marital property under Code § 20-107.3 and also seeks and receives spousal support under Code § 20-107.1.

In the present case, we hold that there was a clear abuse of discretion when the chancellor fashioned the spousal support award that effectively required Mr. Gamble to satisfy the mortgage obligations on the marital home he was required to convey to Mrs. Gamble. Because we are unable to determine that the amount of the award would be the same had the chancellor properly considered the rental income and the payment of the second mortgage, we reverse the spousal support award and remand the issue of the amount of spousal support for reconsideration in light of the views expressed herein.

In summary, we hold that the chancellor properly determined the value of the marital home and properly determined the amount and method of payment of the monetary award. The chancellor erred, however, in applying the provisions of Code § 20-107.1 in the determination of the amount of the spousal support award.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

Duff, J., concurred.

Benton, J., concurring.

The trial judge's letter opinion in this case contains a clear and careful analysis that commendably demonstrates that his decision was reached consistent with the statutory requirements. Accordingly, I concur in the decision upholding the valuation and monetary award issues. I write separately, however, in order to address the significant effect that the changes in Code § 20-107.3 have upon the "one monetary award" rationale underlying *Brinkley v. Brinkley*, 5 Va. App. 132, 361 S.E.2d 139 (1987); *Price v. Price*, 4 Va. App. 224, 355 S.E.2d 905 (1987); and *Mitchell v. Mitchell*, 4 Va. App. 113, 355 S.E.2d 18 (1987); and to address the interplay between Code §§ 20-107.3 (D) and (G) in distributing pension benefits.

The current equitable distribution statute has changed substantially from the statute that was in effect when *Brinkley* was decided. I believe that if *Brinkley* has continuing validity it is because *Brinkley* suggests that the statute is susceptible to parsing and may be better understood if subjected to an analysis of its elements. Obviously, we must use care in relying on cases decided prior to enactment of the current version of the statute. With that disclaimer, I believe it is necessary to reiterate, as we stated in *Brinkley*, that "[a]ll of the provisions of Code § 20-107.3 must be followed in making an equitable distribution decision." *Brinkley*, 5 Va. App. at 136, 361 S.E.2d at 140.

The headnote to the statute that is commonly referred to as "the equitable distribution statute" states that the "court may decree as to property of the parties." Code § 20-107.3. The first subsection of Code § 20-107.3 still provides that the trial judge must

make an analysis of the property. It reads in pertinent part:

> [T]he court, upon request of either party, shall determine the legal title as between the parties, and the ownership and value of all property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital property in accordance with subdivision A 3. The court shall determine the value of any such property as of the date of the evidentiary hearing on the evaluation issue. Upon motion of either party made no less than twenty-one days before the evidentiary hearing the court may, for good cause shown, in order to attain the ends of justice, order that a different valuation date be used.

Code § 20-107.3(A). "This determination must go beyond mere guesswork." *Artis v. Artis*, 4 Va. App. 132, 136, 354 S.E.2d 812, 814 (1987).

Once these steps have been performed, the trial judge must determine the "rights and interests [of each party] in the marital property." Code § 20-107.3(B). The requirements of subsections A and B are fundamental to the analyses which the trial judge must engage when making decisions under the statute. Based upon the analyses under subsections A and B and the factors listed in subsection E, the trial judge may make a decree as to the marital property, if necessary, to reach a fair and equitable result.

Subsections C, D, and G of the statute contain discrete mechanisms by which the trial judge may decree as to the marital property so as to reach a fair and equitable result. The 1988 amendments require the trial judge to consider *all* the subsection E factors in distributing marital property under subsections C, D, G and H. Before 1988, the statute required trial judges to consider subsection E factors *only* when calculating the appropriate amount and method of payment of a subsection D monetary award. Under the current statute, however, the trial judge must also decide *whether* to make a decree as to the marital property under subsections C, D, G or H based on all the factors listed in subsection E. As a result of these changes, it is no longer sufficient for trial judges to make distribution decisions simply by asserting that they based their decisions on all of the statutory factors. The current statute requires an explanation of the manner in which the

decision was derived.

Subsection C authorizes the trial judge "to order the division or transfer, or both, of jointly owned marital property, or any part thereof." Code § 20-107.3(C). The trial judge is expressly prohibited from ordering a transfer of "separate property or marital property which is not jointly owned." Code § 20-107.3(C).[1]

Subsection D authorizes the trial judge "to grant a monetary award, payable either in a lump sum or over a period of time in fixed amounts, to either party." Code § 20-107.3(D). Obviously, the subsection D monetary award will be a monetary sum that has a calculable certain value. Equally obvious, subsection D allows the trial judge to effect the statutory purpose in those circumstances where a disproportionate amount of the marital property is not jointly owned and where a fair and equitable distribution may not be accomplished through a division or transfer of jointly owned property.

Subsection G authorizes the trial judge to make a deferred distribution of pension type benefits. That distribution may be made by "direct[ing] payment of a percentage of the marital share of any pension, profit-sharing or deferred compensation plan or retirement benefits, . . . which constitutes marital property and whether payable in a lump sum or over a period of time." Code § 20-107.3(G).[2] Subsection G, as does subsection D, contains the phrase "in addition" to denote the augmentation of the power given to the trial judge under subsection C.

The statutory scheme explicitly states that whether the trial judge makes (1) a division or transfer under subsection C, or (2) a monetary award under subsection D, or (3) a deferred distribution under G, the decree must be based upon the factors set forth in subsection E.[3] The statutory scheme does not prefer any one of

[1] In recognition of the power explicitly given to the trial judge to distribute pensions, which generally are not jointly owned, the 1991 amendment to the statute added the phrase "Except as provided in subsection G." Code § 20-107.3.

[2] Subsection H authorizes the trial judge to make a distribution of "the marital share of any personal injury or worker's compensation recovery of either party" in the same manner and upon the same limitation as the pension benefits distribution under subsection G. *See* Code § 20-107.3(H).

[3] The statute only uses the term "monetary award" to describe the award granted under subsection D. I believe that the statutory scheme is best understood if the term "monetary award" is confined to the award made under subsection D. For purposes of

the mechanisms described in subsections C, D, and G over the others. The statutory scheme also does not prohibit the trial judge from using all three mechanisms, or a combination of them, in a given case.[4] Obviously in reaching a fair and equitable decree as to the property of the parties, the trial judge should consider how each mechanism (transfer under subsection C, monetary award under subsection D, and deferred distribution under subsection G) may effectively be used to accomplish the statutory purpose. For example, in a proper case, the statute would not forbid, and might equitably require, a trial judge (1) to divide one piece of property jointly titled in the parties' names by ordering transfer of title, (2) to grant a monetary award to one of the parties based upon the rights and interest of the parties in other designated marital properties, and (3) to order a distribution of a percentage of the marital portion of a pension as the benefits are paid. As long as the trial judge does not subject the same part of any given piece of marital property to multiple mechanisms and thus cause a double allotment, the trial judge may use discretion and sound judgment in determining the manner in which to effect the statutory purpose.

In the case we now decide, the husband argues that the trial judge incorrectly interpreted the provisions of subsections D and G of Code § 20-107.3 as they were applied to the pension. He contends that if the trial judge included any portion of his pension benefits in the consideration of marital property from which the trial judge made a determination to give a monetary award, the trial judge may not require payment of the pension-influenced portion of the monetary award until the pension benefits are payable. While the majority rightly rejects this contention, I believe that the interplay between subsections D and G with respect to pensions and similar benefits deserves specific comment in light of

---

clarity I would refer to relief granted under subsection C as a transfer and to relief granted under subsections G or H as a deferred distribution.

[4] This is juxtaposed against this Court's interpretation of the former statutory scheme:

> [T]he statutory scheme of Code § 20-107.3 requires that the equitable division, if any, of the marital property be made by means of a monetary award. Code § 20-107.3(B) requires the trial court to determine the parties' interests and rights in marital property solely for the purpose of making a discretionary monetary award and specifically states that 'such interests and rights shall not attach to the legal title of such property.'

*Brinkley*, 5 Va. App. at 141, 361 S.E.2d at 143.

the amendments to the statute.

In *Brinkley*, decided before the current version of the statute was enacted, Code § 20-107.3(G) read as follows:

> *No part of any monetary award based upon the value of pension or retirement benefits, whether vested or nonvested, shall become effective until the party against whom such award is made actually begins to receive such benefits.* No such award shall exceed fifty percent of the cash benefits actually received by the party against whom such award is made.

(Emphasis added).
Thus, under the former statute, if the marital property included pension benefits and the monetary award was based in whole or in part upon the value of those benefits, a portion of the monetary award could not become effective until the benefits were paid.

The current subsection G contains a subtle but significant change. It now reads:

> *In addition to the monetary award made pursuant to subsection D, and upon consideration of the factors set forth in subsection E, the court may direct payment of a percentage of the marital share of any pension, profit sharing or deferred compensation plan or retirement benefits, whether vested nor nonvested, which constitutes marital property and whether payable in a lump sum or over a period of time.* However, the court shall only direct that payment be made as such benefits are payable. No such payment shall exceed fifty percent of the marital share of the cash benefits actually received by the party against whom such award is made. "Marital share" means that portion of the total interest, the right to which was earned during the marriage and before the last separation of the parties, if at such time or thereafter at least one of the parties intended that the separation be permanent.

(Emphasis added).
The change is not inconsequential. It allows the trial judge to chose the best method for valuing pensions. The legislature has created a statutory scheme that recognizes alternative methods by which the trial judge may distribute pension benefits. The language of subsection G indicates that the limitation on the trial

judge's exercise of discretion is imposed if the trial judge analyzes and distributes the pension under subsection G. In that instance, the trial judge may not direct that pension benefits be paid prior to the time those benefits are payable to the party against whom the judgment is rendered.

In *Mitchell*, this Court relied upon the language of Code § 20-107.3(G) then in effect ("any monetary award based upon the value of pension or retirement benefits") and Code § 20-107.3(E) ("the amount of the [monetary] award . . . shall be determined . . . after consideration of . . . [t]he present value of pension") to hold that the fifty-percent restriction on the division of pensions applied to the monetary award based on the present value of pensions. 4 Va. App. at 121, 355 S.E.2d at 22. The statutory change in subsections G and E invalidated the *Mitchell* rationale, and *Mitchell's* other holding "that the legislature did not intend to give the Court two alternative methods of distributing pension[s]." *Id.* at 121, 355 S.E.2d at 22. Indeed, the statutory change allows the trial judge the alternative of deferring the pension distribution or immediately offsetting the pension through use of a monetary award, a position followed by most states. *See Seifert v. Seifert*, 319 N.C. 367, 354 S.E.2d 506 (1987); L. Golden, *Equitable Distribution of Property* § 6.16 (1983 & Supp. 1991). Each alternative has advantages and practical problems that should be considered by the parties and the trial judge. *See In re Marriage of Gallo*, 752 P.2d 47, 54-55 (Colo. 1988)(en banc); *Martin v. Martin*, 296 S.C. 436, 373 S.E.2d 706 (Ct. App. 1988); L. Golden, *supra* at § 6.16.

Subsection G, as now written, does not prohibit a trial judge from including the marital portion of the pension, or some part of the marital portion, in the consideration of marital property from which a monetary award is fashioned under subsection D. Sufficient non-pension marital property and evidence of the present value of the pension is all that is required. Although the 1988 amendment to the statute deleted the mandatory requirement to consider present value of pension benefits *as a factor under subsection E*, the trial court is not prohibited by the revised statute from considering present value when making a determination of a monetary award under subsection D. Removing from the statute by amendment the mandatory requirement of considering present value of pensions is not tantamount to prohibiting its use where

appropriate.

If there is sufficient non-pension marital property and the trial judge has evidence of the present value of the pension, the trial judge may make a monetary award under subsection D, based upon a consideration of the present value of the pension; provided, it is fair and equitable to do so. Such an award would be immediately effective, provided only that payment of the award may not be directed from a pension, retirement, or similar benefits that are not then payable. Indeed, if a monetary award is based upon use of a present value calculation of a pension, the payment may not be deferred until actual receipt of pension benefits. *See Zipf v. Zipf*, 8 Va. App. 387, 397, 382 S.E.2d 263, 268 (1989). Carried to its broadest application, this reasoning would allow the trial judge to award the entire marital portion of the pension to the spouse in whom the pension is titled and award the other spouse an equivalent portion of non-pension marital property. Such a ruling would have the desirable effect of eliminating the need for further contact between the parties and the court and resolving the equitable distribution of the marital property without delay. As amended, the statute now brings Virginia into line with the position followed in most states that the trial judge may, if it is equitable to do so, award the spouse with the pension the entire pension and grant the other spouse a monetary award or offsetting property equal to the value of the marital share of the pension.

Including the marital portion of the pension within the calculations of a subsection D monetary award, however, is not always practicable, desirable, or equitable. For instance, it would be inequitable to base a monetary award on the marital portion of the pension "when the value of the pension benefits is so disproportionate in relation to other marital property that an immediate distribution would be inappropriate." *Seifert*, 319 N.C. at 371-72, 354 S.E.2d at 509. It is also obvious that the trial judge must know the present value of the pension in order to direct such payment. A further complicating factor is the uncertainty that often results in reaching a determination of present value and in predicting future activity.

If the trial judge determines that a distribution of pension benefits is necessary to achieve an equitable distribution of the marital property and the non-pension marital property is not sizeable, the trial judge may elect to award to the non-employee spouse a per-

centage of the marital share of the pension benefits as they are payable. *See* Code § 20-107.3(G). If the trial judge analyzes and distributes the pension under subsection G, the trial court may not direct that pension benefits be paid prior to the time they are actually received by the party against whom the judgment is rendered. Such an award may be expressed in terms of an easily understood formula. *See Primm v. Primm*, 12 Va. App. 1036, 1037, 407 S.E.2d 45, 46 (1991). *See also* Troyan, *Pension Evaluation and Equitable Distribution*, 10 Fam. L. Rep. 3001, 3007 (1983); *Seifert*, 319 N.C. at 372, 354 S.E.2d at 509; *King v. King*, 332 Pa. Super. 526, 534, 481 A.2d 913, 917 (1984). In making this type of distribution, the present value of the pension is irrelevant. *See Zipf*, 8 Va. App. at 396-98, 382 S.E.2d at 268. *See also King*, 332 Pa. Super. at 534, 481 A.2d at 916-17.

In the absence of inequity and impracticality, nothing in Code § 20-107.3 prohibits the trial judge from exercising discretion and choosing to apply subsection D, subsection G, or some combination of both subsections when equitably distributing marital property including the marital portion of a pension. Where the value of the marital property is sufficient to permit it, either a monetary award based upon present value or a deferred distribution in the form of a fixed percentage is a permissible method of distributing pension benefits in arriving at an equitable distribution of marital property. *See Seifert*, 319 N.C. at 371, 354 S.E.2d at 509.

> The court must be given flexibility to determine which method of distribution to utilize in a given case. Whether any particular option represents an appropriate exercise of discretion depends upon the individual facts and circumstances of the case. It may even be feasible to combine the [deferred distribution] and present value methods. It should also be remembered that it is not always necessary for pension benefits to be specifically divided; rather, they may simply be added to the other marital assets, out of which the court will make the final award.

Golden, *supra* at § 6.16 (footnotes omitted).

There are, however, limitations that must be adhered to. Under the current statutory scheme, a trial judge may not subject any single portion of a marital asset to multiple methods of distribution. This limitation does not, however, prohibit the trial judge

from distributing portions of a single asset under separate subsections. Clearly the legislature did not intend that the trial judge could both (1) make a monetary award under subsection D based upon the equities and the rights and interests of the parties in the entire marital share of the pension, and (2) direct a payment of a percentage of the marital share of that same pension based upon consideration of the entire marital share of the pension. However, in appropriate circumstances and where the evidence justifies it, the trial judge may consider a portion of the marital share of the pension in making a monetary award under subsection D and use the remaining portion of the marital share of the pension in directing payment of a percentage under subsection G. *See Boyd v. Boyd*, 116 Mich. App. 774, 783 n.6, 323 N.W.2d 553, 557 n.6 (1982). The trial judge used this method in this case. As long as the trial judge does not subject the same property to a duplicate analysis of the subsection E factors, the trial judge may use separately identifiable portions of a given piece of marital property to support a monetary award based on an analysis of the subsection D factors on one portion and a direct payment of a percentage of the other portion of the pension. No overlap may exist between the two separately identifiable portions.

Here, the trial judge first classified and valued all the parties' marital property. The trial judge considered the equities, rights and interests of the parties in all the marital property, including both pension and non-pension property. The trial judge then applied the statutory factors under subsection E to determine the amount of the monetary award and the method of payment. The trial judge "conducted the same analysis under [subsection] G as to the pension benefits taking into consideration [his] determination of the monetary award." In fashioning an award, the trial judge determined that the wife should retain the marital residence and the husband should retain the principle interest in the parties' largest marital asset, the husband's pension. To this end, the trial judge ordered a monetary award to the wife of $35,524.96, to be satisfied in large part by the husband's conveyance to the wife of his interest in the marital residence. This sum is approximately equivalent to thirty percent of the present value of the marital share of the husband's pension, as proved by the husband. Under Code § 20-107.3(D), the trial judge offset thirty percent of the wife's interest in the present value of the husband's pension by awarding her the equivalent worth in non-pension property (i.e.

the marital home). However, since the trial judge had determined that the wife was entitled to fifty percent of the marital share of the husband's pension, and only thirty percent of the present value of the marital share of the pension had been offset by the monetary award, the trial judge determined that the remaining twenty percent should be deferred and paid to the wife when the pension benefits are payable. In the letter opinion, the trial judge specifically stated: "In order to *offset* the impact of my previously considering a *portion* of the value of [the] pension, the percentage of [the husband's] pension award to [the wife] under § 20-107.3G is 20% of [the husband's] pension with such payment to be made as the benefits are payable."

Because each pension plan presents a different set of problems, an appellate court should hesitate to dictate any specific techniques for equitably distributing pension benefits. *See Pulliam v. Pulliam*, 796 P.2d 623 (Okla. 1990). Our scope of review of the trial judge's choice of equitable distribution methods should be limited to whether the choice made in a particular case constitutes an abuse of discretion. *Artis v. Artis*, 4 Va. App. 132, 137, 354 S.E.2d 812, 815 (1987). *See also Imagnu v. Wodajo*, 85 Md. App. 208, 582 A.2d 590 (1990). In this case, the trial judge's method was novel, but clearly in line with statutory requirements and supported by the facts recounted in the record.

Accordingly, I would affirm the property decree judgment. For the reasons stated in the majority opinion, I would also reverse the spousal support award.