245

## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

John M. Wilson

v.

Barbara P. Wilson

February 25, 2002

Case No. CH00-855

BY JUDGE WILLIAM LEDBETTER

The commissioner's recommendations regarding equitable distribution shape the primary controversy in this divorce suit.

*Facts*

Mr. and Mrs. Wilson were married in 1952. They separated in October of 2000 when Mrs. Wilson left the marital residence. Three children, all now adults, were born of the marriage.

During most of the marriage, Mr. Wilson worked for the Federal Home Loan Bank Board and its successor agencies. Although Mr. Wilson's employment was the primary source of income for the family, Mrs. Wilson also worked outside the home, primarily in secretarial positions, for most of the marriage.

Mr. Wilson retired in 1989. After that, he supplemented his retirement income with part-time jobs. For about three years, he worked at

Fredericksburg RV. Currently, he has two part-time jobs: he drives for an airport transportation service, and he works at Fredericksburg Auto Auction on Thursdays.

After Mr. Wilson's retirement, Mrs. Wilson did not work for about three years. Then, in 1992, she went back to work at various jobs and in 1996 she went to work for Fredericksburg RV. She still works there.

At Fredericksburg RV, Mrs. Wilson met Jerry Moseley, general manager of the business. She went on business trips with him. They socialized together.

In September of 1999, Mr. Wilson moved to the lower level of the marital home at Mrs. Wilson's request. A little over a year later, Mrs. Wilson moved out. The parties have lived separate and apart since then.

Mrs. Wilson, 69, lives in an apartment on Castleridge Road in Spotsylvania County. Mr. Wilson still lives in the marital residence in Lake of the Woods. He is 71 years old.

Mr. Wilson instituted this suit on December 15, 2000, alleging desertion. Mrs. Wilson answered and filed a cross-bill alleging cruelty. On April 27, 2001, the court entered an agreed pendente lite order. The case was referred to a commissioner in chancery.

The commissioner conducted an evidentiary hearing on August 14-15, 2001. Thereafter, he filed a nineteen-page report. Mr. Wilson took additional evidence by deposition on December 4, 2001, to establish that the parties remained separated. Mrs. Wilson noted three exceptions to the commissioner's report; Mr. Wilson took two exceptions. Arguments were heard on February 7, 2002.

### Divorce

The commissioner found that the evidence supported Mr. Wilson's allegation of desertion. *Petachenko v. Petachenko*, 232 Va. 296 (1986). The commissioner found that Mrs. Wilson's claim of cruelty had not been proven. *Sollie v. Sollie*, 202 Va. 855 (1961).

Neither party took exception to those findings. The record supports the commissioner. Therefore, Mr. Wilson will be granted a divorce based on desertion under Virginia Code § 20-91(6).

### Equitable Distribution

No exceptions have been filed with respect to the commissioner's identification, classification, and valuation of the parties' marital assets. The commissioner catalogued the property on page 16 of his report. The parties'

marital property consists of the following items: the marital residence in Lake of the Woods, a vacant lot in Lake of the Woods, three motor vehicles (including a 1972 Chevrolet recently sold), household furniture and furnishings, including "fine art" and silverware, lot in New York, Wachovia savings account, four MONY accounts, a treasury bill, an IRA, jewelry, AMI stock, Mr. Wilson's federal retirement.

The marital home is encumbered by an equity line mortgage, the balance of which is $22,929.00.

Mrs. Wilson's first exception asserts that the commissioner treated Mr. Wilson's retirement fund as "current income" rather than a marital asset and that his allocation of 10% of the monthly retirement benefits to her is erroneous.

Although the commissioner did not list Mr. Wilson's retirement fund on page 16 with the other marital assets, he did consider it marital property. He specifically referred to § 20-107.3(G) when recommending that Mrs. Wilson receive 10% of the benefits. He used the principles set forth in § 20-107.3 when he correctly determined that all of the retirement benefits were marital because Mr. Wilson's entire career with the federal government occurred during the marriage. (See page 17 of the report.) His discussion of the retirement fund is found in Section V of the report labelled "equitable distribution."

Mrs. Wilson correctly observes that retirement funds, even those that are being paid out at the time of divorce, are marital assets under § 20-107.3. Mrs. Wilson is incorrect in her contention that the commissioner did not treat Mr. Wilson's retirement as a marital asset under § 20-107.3.

Mrs. Wilson's second exception addresses the marital home. She says that the commissioner erred when he awarded the entire value of the marital home to Mr. Wilson and ordered its transfer to him under § 10-107.3(C). Further, she says in her third exception, the commissioner compounded the error by failing to require Mr. Wilson to assume the equity line indebtedness that encumbers the marital home.

Both of these exceptions, when combined with the first exception, actually challenge the entire scheme of distribution recommended by the commissioner.

As explained in his report (pages 16-17), the commissioner transfers property having a value of $164,756.00 to Mrs. Wilson and property having a value of $241,276.00 to Mr. Wilson. In other words, the commissioner recommends that Mr. Wilson receive 59.5% of the marital assets and Mrs. Wilson 40.5%. Then, he recommends that the parties' sole debt, the equity line mortgage, $22,929.00, be allocated to Mr. Wilson. When that is done, Mr.

Wilson receives a 57% share of the net value of the parties' marital property and Mrs. Wilson 43%. The court must consider the fairness of the distribution as a whole.

Although he did not quantify each factor, it is obvious that the commissioner considered the statutory factors in § 20-107.3(E).

It is axiomatic that Virginia's equitable distribution statute does not provide for an equal division of marital property, nor is such a division presumed. *Gamble v. Gamble*, 14 Va. App. 558 (1992); *Papuchis v. Papuchis*, 2 Va. App. 130 (1986). Instead, the court is to make an "equitable" distribution based upon careful consideration of all the factors listed in subsection E of § 20-107.3.

In considering the fairness of the 57%-43% division recommended by the commissioner, the court is mindful that a much larger portion of Mrs. Wilson's share is liquid. See § 20-107.3(E)(8).

The court is also mindful of the commissioner's references to Mrs. Wilson's acquisition of certificates of deposit and her deposits into a savings account unbeknownst to Mr. Wilson. One can infer from those references that the commissioner considered those actions as "negative contributions" to the marriage. The court disagrees with that analysis.

Misuse of marital assets can be considered by the court as a "negative monetary contribution." The misuse, however, must amount to waste or dissipation.

In *Booth v. Booth*, 7 Va. App. 22 (1988), the court said that waste "may be generally characterized as the dissipation of marital funds in anticipation of divorce or separation for a purpose unrelated to the marriage and in derogation of the marital relationship at a time when the marriage is in jeopardy."

Subsequent to Booth, the Court of Appeals has clarified the phrase "in anticipation of divorce or separation." In *Clements v. Clements*, 10 Va. App. 580 (1990), the court held that waste occurs "when one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown." See also *Amburn v. Amburn*, 13 Va. App. 661 (1992); *Anderson v. Anderson*, 29 Va. App. 673 (1999). This court addressed the same issue in an opinion dated August 17, 2001, in *Whelan v. Whelan*, 56 Va. Cir. 362 (2001).

Here, Mrs. Wilson was putting money aside without Mr. Wilson's knowledge beginning in the mid-1990's. Clearly, she was not then doing so "in anticipation of divorce" or "at a time when the marriage [was] undergoing an irreconcilable breakdown," as defined in Booth and its progeny. Further, she testified without contradiction that she was putting the money aside for "rainy days" or "for difficult times." She spent some of it on a variety of

things, including cruises that the parties took together. There is no evidence that she squandered the money for her own benefit or for a purpose unrelated to the marriage.

As explained in Booth, during a functioning marriage, and until the parties contemplate divorce, "each is free to spend marital funds." That is especially true where the expenditures are related to the household or marital activities.

Therefore, the court holds as a matter of law that Mrs. Wilson's actions in setting aside marital funds and in subsequently spending some of those funds for various purposes do not constitute waste or dissipation and do not constitute a negative monetary contribution that can be weighed against Mrs. Wilson in making an equitable distribution.

Upon consideration of all the evidence and the factors in § 20-107.3(E), the court is of the opinion that Mrs. Wilson is entitled to a monetary award (§ 20-107.3(D)) of $9,000.00 in addition to the assets assigned to her in the commissioner's scheme of distribution. Mr. Wilson may pay this award in lump sum or in nine equal installments of $1,000.00 each beginning in April 2002.

As the commissioner recommends, Mr. Wilson's distributed share will include the jointly-owned marital residence, which will be transferred to him by deed of assumption under § 20-107.3(C) if he agrees to assume the equity line mortgage. (If he does not agree to assume the mortgage, the house will be sold and the net proceeds will be equitably divided.)

### Spousal Support

The commissioner concluded that neither party should receive spousal support or a reservation of spousal support. Mr. Wilson takes exception to that holding, contending that he is entitled to a reservation of spousal support. The court agrees with Mr. Wilson.

Where there is no bar to the right of spousal support, the trial court must, upon request of either party, make a reservation in the divorce decree of the right to receive spousal support in the event of a change of circumstances. This is true even though, at the time of the decree, neither party needs support. *Blank v. Blank*, 10 Va. App. 1 (1990).

### Costs and Attorney's Fees

Mr. Wilson took exception to the commissioner's decision to allocate the costs equally and to award no attorney's fees. Upon consideration of all the circumstances, the court cannot say that the commissioner erred in that determination.

250

*Conclusion*

The commissioner's report will be approved and confirmed, except for the two modifications discussed above: (1) the addition of a $9,000.00 monetary award to Mrs. Wilson; and (2) conformance of the transfer of the marital residence to Mr. Wilson so that he must agree to assume the equity line mortgage, consistent with § 20-107.3(C).