## CIRCUIT COURT OF FAIRFAX COUNTY

Donald A. Barnes

v.

Winifred K. Barnes

Case No. C-123557

BY JUDGE THOMAS A. FORTKORT

May 12, 1994

The Court denies Mr. Barnes' motion for reconsideration of its decision not to allow into evidence the economic analysis report of Brinig and Company. This report converts into a total sum the amount of money that the "parties saved" because Mr. Barnes had a "favorable" mortgage of 8 3/4% on the home he brought into the marriage. The Court rejected the document prepared by Brinig and Company as speculative.

The favorable mortgage rate is no more a financial consideration than the salary Mr. Barnes earned at the time of marriage or that his prospects were economically advantageous because he was a practicing lawyer. Those are assets he brought into the marriage and to compare them with what might have been alternately available on the date of marriage to determine equitable distribution of that asset is total conjecture.

The Court has reconsidered its ruling and the motion for reconsideration is denied.

May 31, 1994

This matter is before the Court on the motion of the Complainant, Donald Barnes, for this Court to assume jurisdiction over issues of custody, visitation, and support of the parties' minor children. For the reasons outlined below, this Court declines to assert such jurisdiction.

The facts are those elicited at oral argument and briefed in the parties' memoranda. A divorce action was initiated by the Defendant, Winifred Barnes, in Colorado on October 8, 1991. The Colorado court dismissed the divorce petition for lack of jurisdiction; however, that court retained custody jurisdiction ancillary to the dismissed divorce action. The Complainant filed a child custody action in Fairfax Juvenile and Domestic Relations District Court on October 11, 1991. That court stayed the proceedings by order of December 2, 1991, pending the outcome of the litigation in Colorado. In the interim, the Complainant had filed a divorce action in Fairfax Circuit Court on October 25, 1991. The Complainant appears before this Court requesting that pursuant to this Court's exercise of jurisdiction over the divorce proceeding, the Court must assert jurisdiction for the purposes of making a custody determination as well.

Resolving this dilemma necessitates reference to the Uniform Child Custody Jurisdiction Act (UCCJA) (incorporated into the Code of Virginia § 20-125 through § 20-146). The cardinal objective of the legislation is to restrict judicial power to alter custody decrees rendered in another state. To achieve that end the Code of Virginia mandates, "A court of this Commonwealth shall not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this chapter . . . ." Code of Virginia § 20-129(A) (1950), as amended.

Confronted with this statutory scheme and with knowledge of the pending Colorado action, the Juvenile Court stayed the Virginia proceeding, refraining from making an adjudication involving custody. Despite this ruling of the Juvenile Court, the Complainant maintains that once a divorce petition is filed in Circuit Court, the Juvenile Court is "divested of the right to enter further orders or decrees" regarding the "custody, guardianship, visitation, or support" of the parties' children. *Id.* at § 16.1-244(A). Although this court does not challenge the plain language of the statute, the section continues, directing that, "nothing in this section shall deprive . . . the juvenile and domestic relations district courts of the jurisdiction to enforce its orders prior to the order of any circuit court . . . ." *Id.*

Construing this provision the Virginia Court of Appeals held, "the divestiture provisions of Code § 16.1-244(A) do not annul the judgment of the juvenile court as if no previous hearing occurred. Rather the judgment of the juvenile court remains in full force and effect until modified by the circuit court to which jurisdiction has been transferred." *Peple v. Peple*, 5 Va. App. 414, 421 (1988).

In light of this decision, this Court chooses not to modify the Juvenile Court decree at this time. Therefore, although this court has reservations concerning the propriety of the Colorado court's assertion of custody jurisdiction, this court will presently refrain from exercising its own custody jurisdiction in this dispute. For this court to exercise jurisdiction would be to countermand the fundamental intent of the UCCJA which is to eliminate the simultaneous institution of custody proceedings in more than one state. The Order of Stay entered by the Juvenile Court remains in effect, and this Court will defer to the proceedings previously commenced in Colorado. Further appeal of this issue must be addressed to the Colorado appellate court.

February 22, 1996

BY JUDGE F. BRUCE BACH

This matter comes before this court upon Defendant Winifred Barnes Motion for Entry of a Qualified Domestic Relations Order ("QDRO"). The issues before this Court are:

I. Whether Complainant Donald A. Barnes' retirement plan(s) with Baker & Hostetler permits Ms. Barnes to receive immediate payment of funds upon entry of her proposed QDRO;

II. Whether Virginia law permits Ms. Barnes to receive immediate payments from the retirement plan(s), even though Mr. Barnes elects to defer these payments until he reaches age 65; and

III. Whether an award of attorney's fees is appropriate to either party.

For the reasons stated below, I find that Ms. Barnes is presently entitled to receive her fifty percent of Mr. Barnes' plan(s) held at Baker & Hostetler.

### Background of the Case

On April 22, 1994, this Court ordered a monetary award to be paid by Mr. Barnes to Ms. Barnes in the amount of $42,816.28. Final Decree, p. 10. This amount did not include any share of Mr. Barnes' Baker & Hostetler pension or retirement plan. This court made a separate award to

Ms. Barnes of her "marital share of such pension," finding that the marital share is $141,199.18, and the amount of $70,566.53 of such pension accounts "shall be transferred to Defendant Winifred K. Barnes . . . and all the remaining balance in such pension accounts shall become the sole property of Complainant Donald A. Barnes." Final Decree, p. 12.

On April 4, 1995, the Virginia Court of Appeals reversed this Court's determination of the pension award contained in the Final Decree of Divorce. The Court of Appeals remanded the determination of the pension award to this Court, directing it to order Mr. Barnes to execute documents enabling the plan administrator to "separate and supervise" Ms. Barnes' fifty percent share of the benefits and to notify the plan administrator when and how Ms. Barnes' fifty percent share is to be disbursed. *Barnes v. Barnes*, Rec. No. 0943-94-4, p. 6 (Court of Appeals of Virginia).

### Complainant Donald Barnes' Argument

Mr. Barnes opposes entry of the QDRO as proposed by Ms. Barnes and argues that Virginia law does not permit a distribution of pension benefits to Ms. Barnes, the non-employee spouse, prior to his receipt of any payments from his pension. Mr. Barnes argues that § 20-107.3(G) of the Virginia Code "links" distribution of pension benefits to actual payments to the retiring spouse; if Ms. Barnes is permitted to withdraw her benefits from the pension, the amount she will receive may actually exceed fifty percent of the total pension eventually paid. Mr. Barnes further asserts that under the terms of the pension plan(s) at issue, he expects to begin receiving pension payments at age 65, and although Ms. Barnes is entitled to fifty percent of the pension, her entitlement exists only as it is paid to him and at no time before it is paid to him. Although Mr. Barnes agrees that the Internal Revenue Code and other federal laws governing pension distributions would permit such early payments, he claims that these permissive payments would be in violation of Virginia divorce law regarding equitable distribution.

### Defendant Winifred Barnes' Argument

Ms. Barnes argues that pursuant to § 20-107.3(G) of the Virginia Code, the Court may direct a percentage of the marital share of a pension to be paid to the non-employee spouse, even though funds have not been actually paid to the employee spouse. Ms. Barnes asserts that the only restriction under Virginia law is that the funds must be "payable" to the employee spouse pursuant to the pension plan(s). In this case, Ms. Barnes

contends that this Court's award is a portion of Mr. Barnes' retirement benefits which are to be paid to her directly from the plan administrator and not a monetary award of the value of her share of Mr. Barnes' retirement benefits. She further asserts that the funds are presently "payable" to Mr. Barnes, and therefore, should be accessible to her, and her election to receive payments at this time will have no effect on Mr. Barnes' portion of the pension funds. Ms. Barnes also makes the argument that the funds at issue are not pension funds but rather profit-sharing funds and therefore distinguishable from pension funds, but that distinction is not well taken and is rejected.

## I. *The Baker & Hostetler Plan*

Upon termination of his employment with Baker & Hostetler, Mr. Barnes reached his "Earliest Retirement Age," even though he is only in his early forties. The Earliest Retirement Age is defined as "the earlier of (i) the date on which the participant is entitled to a distribution under the plan, or (ii) the later of (I) the date the participant attains age 50, or (II) the earliest date on which the participant could begin receiving benefits under the plan if the participant separated from service." I.R.C. § 414(p)(4)(B) (1996). The applicable Baker & Hostetler plans permit distribution of the benefits wherever a participant (1) terminates employment, (2) dies, (3) retires, or (4) becomes disabled. Correspondence received from Howard D. Kinstlinger, Assistant Director of Finance for Baker & Hostetler, indicates that the QDRO proposed by Ms. Barnes is acceptable to the Baker & Hostetler plan administrator. Specifically, Mr. Kinstlinger indicates that the QDRO is acceptable pursuant to the applicable federal law and to the applicable retirement plan(s). Mr. Kinstlinger writes: "the Order could have permitted Ms. Barnes to take a distribution of her awarded benefit on or after the date Mr. Barnes terminated service, regardless of when Mr. Barnes applied for a distribution of his retained benefits." Mr. Kinstlinger further affirms that the funds would be immediately payable to Ms. Barnes upon entry of the QDRO (subject to the plan administrator's final determination). (Letter from Howard D. Kinstlinger of Baker & Hostetler of November 20, 1995, at 3.)

Based upon these representations of the Assistant Finance Director for Baker & Hostetler, I find that the proposed QDRO permitting Ms. Barnes to receive an immediate payment of funds upon entry of the QDRO is acceptable pursuant to the Baker & Hostetler plan(s).

## II. *Virginia Law*

In its current form, § 20-107.3(G)(1) of the Virginia Code states in pertinent part:

> The court may direct payment of a percentage of the marital share of any pension . . . or retirement benefits . . . which constitutes marital property and whether payable in lump sum or over a period of time. The court may order direct payment of such percentage of the marital share by direct assignment to a party from the employer trustee, plan administrator, or other holder of the benefits. *However, the court shall only direct that payment be made as such benefits are payable. No such payment shall exceed fifty percent of the marital share of the cash benefits actually received by the party against whom such award is made.*

§ 20-107.3(G)(1) of the 1950 Code of Virginia, as amended (1995) (emphasis added).

As the statute currently reads, there is some tension between the words "payable" and "benefits actually received." As the parties' arguments reveal, the statute is conceivably capable of more than one interpretation and is therefore ambiguous. Where the statute is ambiguous, the "history of the statute, its purpose, its reason and spirit, [and] the old law" may be used to ascertain the legislature's intent. *Athens Stove Works v. Fleming,* 66 F.2d 855, 858 (4th Cir. 1933).

Where a phrase or sentence is subject to different interpretations, the court should examine the statute as a whole to ascertain the legislative intent, as manifested by its different provisions. If, consistent with the language used, an interpretation can be made which will effect the object sought to be accomplished by the statute, that interpretation should be adopted in preference to one which would be equally consistent with the language standing alone but which would tend to defeat the manifest intention of the legislature. *Harris v. Commonwealth,* 142 Va. 620, 625 (1925).

A brief review of the history of the pension provisions of Virginia Code § 20-107 is illuminating. In 1982, the statute read in pertinent part:

> No part of any monetary award based upon the value of the pension or retirement benefits, whether vested or nonvested, shall become effective until the party against whom such award

is made *actually begins to receive such benefits*. No such award shall exceed fifty percent of the cash benefits actually received by the party against whom such award is made.

§ 20-107.3(G) of the Virginia Code (1982) (emphasis added). In 1985, the General Assembly amended the statute to read in part:

The court may direct payment of a percentage of pension, profit sharing, or retirement benefits, whether vested or nonvested, payable in a lump sum or over a period of time and *only as such benefits are payable*. No such payment shall exceed fifty percent of the cash benefits actually received by the party against whom such award is made.

§ 20-107.3(G) of the Virginia Code (1985) (emphasis added).

The use of the word "payable" clearly addresses the issue of the timing of the payments. Thus, the 1985 amendment allows the recipient spouse to receive benefits when they are "payable" instead of when the participant spouse "actually begins to receive such benefits," as was required by the 1982 version of the statute.

In contrast, the phrase "actually received" addresses the court's authority to make an award and limits the court's authority to make an award to the recipient spouse. Pursuant to this phrase, the maximum award the court is authorized to make to the recipient spouse is "fifty percent . . . of the cash benefits actually received" by the participant spouse. These words do not address timing, as that issue is addressed by the preceding sentence, but rather they circumscribe the court's authority as to the size of the award.

The Court should presume that the legislature acted with full knowledge of the law as it stood bearing on the subject with which it proposed to deal. *Powers v. County School Board*, 148 Va. 661, 669 (1927). Therefore, the presumption is that the legislature purposefully amended § 20-107.3(G) of the Virginia Code to include the word "payable," with the awareness that that section also contained the existing phrase "actually received." The second presumption is that the legislature intended this amendment to mean two different things: (1) the funds are available to the recipient spouse as they are "payable" and (2) the recipient spouse may not receive an award which will exceed fifty percent of the cash benefits actually received by the participant spouse. Otherwise, if the legislature intended to restrict the availability of the funds to the recipient spouse to a time when

the participant spouse "actually received" the benefits, the legislature could have used the phrase "are paid" instead of the word "payable."

Finally, the 1988 amendment[1] to Subsection (G) was intended "only to clarify what has always been contemplated by the Code § 20-107.3 scheme for equitable distribution of the marital wealth of the parties: a *distribution* which will equitably 'compensate a spouse for his or her contribution to the acquisition of [all marital] property obtained during the marriage'." *Gamble v. Gamble*, 14 Va. App. 558, 569 (1992), citing *Sawyer v. Sawyer*, 1 Va. App. 75, 78 (1985).

For the reasons stated, I find that the legislative intent is to allow the recipient spouse to receive pension benefits as they are "payable" and not as the benefits are actually paid to the participant spouse. Restricting Ms. Barnes' access to the benefits by allowing Mr. Barnes to control when, and if, he ever "actually receives" these benefits would be inequitable and would defeat the intent and purpose of the statute which is ascertained by an examination of the specific language used and the history of the statute.

It should be noted that the case law in Virginia indicates that a monetary award based upon the value of the pension and/or retirement plan may only be payable when the party against whom such an award is made actually begins to receive such benefits. *See, e.g., Mitchell*, 4 Va. App. 113 (1987); *Brinkley v. Brinkley*, 5 Va. App. 132 (1987). Such cases involve single monetary awards where the value of the pension is calculated as all or part of a monetary award. In the instant case, this Court made both a marital award and an award of a percentage of a pension, and the cases cited are inapplicable. The case of *Gamble v. Gamble*, 14 Va. App. 558 (1992), sets forth the rationale for this distinction. In *Gamble*, the Court of Appeals analyzed the cases where the monetary award was defective because the amount of the award was determined in part on the value of the pension benefits but was ordered to be paid in violation of Subsection (G) prior to the time the party against whom the award was made actually received the pension benefits. The Court emphasized: "Subsection (G), prior to and following the 1988 amendment, is a legislative recognition of

---

[1] The 1988 amendment changed the statute to read, in part: *"However, the court shall only direct that payment be made as such benefits are payable.* No such payment shall exceed fifty percent of the marital share of the cas[h] benefits actually received by the party against whom such award is made." § 20-107.3(G) of the Virginia Code (1988) (emphasis added).

the obvious; one cannot pay an award with funds he or she does not currently possess." *Gamble* at 569.[2]

In the instant case and under the existing § 20-107.3(G), when the Court makes an award of pension benefits distinct from a monetary award, the portion of the benefits awarded to the recipient spouse becomes that party's property and the participant spouse no longer has any claim to that portion. The recipient spouse can then manage the funds as he or she deems fit, restricted only by the applicable federal law and the particular plan provisions. There is no danger of requiring the participant spouse to pay an award with funds that he does not currently possess or to pay an award exceeding fifty percent of the cash benefits he will receive. The pension is currently payable to Mr. Barnes because he has already achieved the required retirement status enabling him to receive his benefits under the Baker & Hostetler plan(s). Even if he elects to defer payment until he attains age 65, the funds are currently available to him, and the management of the funds is clearly within his control. Further, by directing the plan administrator to "segregate and supervise" the funds, the Order ensures that Ms. Barnes will not receive any portion of Mr. Barnes' remaining fifty percent share but that Ms. Barnes will receive her fifty percent share of the funds as intended by the equitable distribution scheme established by the Court, while Mr. Barnes will receive the fifty percent share to which he is entitled by the Order.

### III. *Attorneys Fees*

I find that an award of attorneys' fees is not appropriate at this time.

### Conclusion

I find that the benefits at issue are presently "payable" to Mr. Barnes, and therefore, Ms. Barnes is eligible to receive her percentage share of the benefits previously awarded.

---

[2] The Court states: "We recognize that where pension benefits are a portion of the pool of marital assets to which all of the provisions of Code § 20-107.3 must be applied, the continuing struggle has been to determine the value of these benefits and to equitably distribute that value without requiring payment before the benefits are received by the payor spouse." *Gamble* at 569. The instant case is distinguishable because the marital award does not include the value of the pension.