# CIRCUIT COURT OF CHESTERFIELD COUNTY

As'ad M. Masri

v.

Linda Scott Masri

## Case No. CH98-92

BY JUDGE RANDALL G. JOHNSON

### January 4, 1999

This divorce case, in which a final decree was entered on June 3, 1998, is before the court on defendant-wife's request for equitable distribution, spousal support, and attorney's fees and costs, as well as her request that Dr. Masri be held in contempt for failing to comply with a previous order requiring him to pay *pendente lite* spousal support. An *ore tenus* hearing was held on December 17, 1998. The parties have also submitted as evidence depositions taken in April 1998.

Dr. and Ms. Masri were married on December 26, 1961. Dr. Masri is 62 years old; Ms. Masri is 58. They are both in good health. At the time of their marriage, Dr. Masri, who was then not an American citizen, was a fourth-year medical student at the University of Virginia. From 1961 to 1966, the parties had two children, and Ms. Masri, a nurse, worked full time to support the family while Dr. Masri completed his medical residency. In 1966, the family moved to Petersburg where Dr. Masri set up his psychiatric practice. Both parties also worked at Petersburg General Hospital (now Southside Regional) in the psychiatric unit. In 1967, Dr. Masri became a United States citizen, having been sponsored by Ms. Masri.

From all indications, Dr. and Ms. Masri were a very happy and secure couple during the first twenty-five years or so of their marriage. Shortly after

moving to Petersburg, they had two more children; Dr. Masri began earning relatively large sums of money from his psychiatric practice; Ms. Masri became a traditional housewife; and their family life was good. This all changed, however, in 1988.

In 1988, Dr. Masri, who made all of the financial, business, and investment decisions for the family, experienced a rapid decline in his financial affairs. He made and engaged in what proved to be unwise investment decisions, bad loans, and failed joint ventures. By the end of 1991, the parties were in dire financial straits, most of their assets had been liquidated to keep the family "afloat," and Ms. Masri was forced to return to outside employment as a psychiatric nurse. Their fortunes continued to decline, however, and in 1993, they filed for bankruptcy. They lost their marital home in Colonial Heights, a cottage in Nags Head, North Carolina, a home in Lake Tahoe, Nevada, and, according to Ms. Masri, "everything else." In 1994, Dr. Masri was investigated for Medicaid and insurance fraud. He eventually pleaded guilty to one count of mail fraud and spent five months in federal prison. He also lost his medical license, while he was in prison, Ms. Masri did the best she could to pay the family bills, and she visited Dr. Masri every week.

In 1995, Dr. Masri's medical license was returned to him. Although he was not allowed to participate in insurance plans because of his felony conviction, he was allowed to see patients. With their combined incomes, he and Ms. Masri were able to pay their bills and, although not nearly as financially comfortable as they had been, appeared to be making things work. On May 26, 1996, however Ms. Masri returned home from work and found that Dr. Masri had left and that most of his clothes were gone. It was not until her daughter called her that she learned that Dr. Masri had left the country and gone to the Middle East, where he is from. Although he had been making plans to leave for several months, he had given Ms. Masri no notice of his plans and had never said anything to her to make her aware of his impending departure. As a result, Ms. Masri was suddenly forced to deal single-handedly with all of the accounts from Dr. Masri's psychiatric practice and all of the parties' marital debts, including an Internal Revenue Service lien of nearly $400,000.00 that resulted from erroneous refunds previously paid to the parties and spent before the error was detected.

In January 1997, while still in the Middle East, Dr. Masri's medical license was again suspended, this time for not complying with the terms of his probation. Specifically, Dr. Masri did not perform community service and take an educational course in billing practices as required. Although he worked as a doctor in the Middle East, he never received any compensation other than

expenses. He returned to the United States in September 1997 and has not worked since then. On the other hand, Ms. Masri has been gainfully employed since 1991, often working two jobs, and she continued to pay the parties' joint debts while Dr. Masri was in jail and even while he was in the Middle East. Based on all of these facts, the court makes the following rulings.

## I. *Equitable Distribution*

The parties have the following marital property:

### A. *Colonial Heights Property*

The parties own four acres of land in the City of Colonial Heights which is assessed for tax purposes at $2,500.00. The court finds that to be its fair market value. The parties agree that it should be awarded to Ms. Masri.

### B. *Petersburg Property*

Dr. Masri is a joint owner of a building in Petersburg which formerly housed his medical office. Two other doctors are the other owners. The property was purchased in 1970 while Dr. and Ms. Masri were married, so Dr. Masri's share is marital property. The court find that the property has a fair market value of $268,800.00, which is the tax assessment, and Dr. Masri owns an undivided one-fourth interest in it. The parties ask that this property be awarded to Dr. Masri.

### C. *Partnership Interests*

The parties are joint owners of interests in three partnerships. No evidence was presented as to the value of the partnerships, and Ms. Masri has waived all of her interest in them.

### D. *Stock*

Dr. Masri owns 25.607 shares of The Equitable Companies, Inc., worth $2,024.06. The shares are marital property.

## E. *Individual Retirement Account*

The final item of marital property before the court is the only one that is significantly in dispute. This is Dr. Masri's IRA, which has a present value of $57,456.07. It is being held in escrow by Dr. Masri's attorney pending resolution of this action.[1]

As already noted, the parties have agreed that Ms. Masri will receive the real property in Colonial Heights and that Dr. Masri will receive the real property in Petersburg. Ms. Masri has also waived her interest in the three partnerships, on which no evidence of value was presented. Ms. Masri now asks the court to award her Dr. Masri's stock in The Equitable Companies, all of his IRA, and a cash payment in the amount of $10,626.00. This, she says, will achieve an almost even distribution of the parties' property after giving her credit for payments she made toward the parties' marital debt while Dr. Masri was in jail and while he was out of the country. On the other hand, Dr. Masri asks the court to use $3,500.00 to purge his contempt of the court's previous spousal support order, which will be discussed in more detail later, and to make a more even distribution of his stock and the remainder of his IRA. He argues that Ms. Masri has received all, or nearly all, of the parties' personal property, as well as numerous items of jewelry he gave to her during the marriage, and that a more even distribution of his IRA and stock is appropriate. The court concludes that Ms. Masri's scheme of distribution is infinitely more reasonable than Dr. Masri's, and it will be approved.

Virginia Code § 20-107.3(E) sets out the factors a court must consider in making an equitable distribution award. In light of the history of this marriage, it is clear that those factors are in Ms. Masri's favor. Indeed, this court can think of no other case which has ever come before it in which the statutory factors so heavily predominated in favor of one of the parties. From supporting the family during Dr. Masri's medical residency to sponsoring his application for U.S. citizenship to standing by him and visiting him in jail to paying the

---

[1] At the December 17th hearing, counsel for Dr. Masri informed the court that Trigon Blue Cross/Blue Shield, one of the victims of Dr. Masri's criminal fraud, has claimed that it is entitled to all or a portion of Dr. Masri's IRA under an order of restitution in his criminal case. The court, however, has been unable to find any authority for the proposition that an order of restitution in a criminal case creates a lien on any specific property of the defendant. Thus, while Dr. Masri may be under an order to pay Trigon a specific sum of money as part of his criminal sentence or as a condition of his probation, Trigon cannot prevent this court from distributing any specific item of Dr. Masri's property.

family bills when he suddenly and unilaterally left the country, Ms. Masri has gone far beyond what anyone should expect of a spouse. In fact, if the purpose of equitable distribution were to punish a guilty spouse or to reward a good one, the court would probably be justified in awarding 100% of the marital property to Ms. Masri. Punishment, however, is not the purpose of equitable distribution. Instead, it is to compensate a spouse for his or her contribution to the acquisition and care of marital property during the marriage. *Sawyer v. Sawyer*, 1 Va. App. 75, 78, 335 S.E.2d 277 (1985). Based on all of the factors of the statute and based on Ms. Masri's overwhelmingly greater monetary and non-monetary contributions to the marriage, her suggested distribution is more than reasonable.

Dr. Masri's interest in the Petersburg property, which the parties agree will go to Dr. Masri, has a fair market value of $67,200.00. Giving Ms. Masri the Colonial Heights property ($2,500.00), The Equitable Companies stock ($2,024.00), and all of the IRA ($57,456.00), her share is still only $61,980.00, over $5,000.00 *less* than what Dr. Masri will receive. Indeed, in light of the evidence in the case, such a distribution is not equitable, since it does not take into account Dr. Masri's desertion of Ms. Masri and the marriage and his walking away from the marital debt. Accordingly, in addition to the distribution just made, the court will also order Dr. Masri to make a monetary payment to Ms. Masri of $10,626.00, which is the amount of two specific marital debts paid solely by Ms. Masri and are the only ones for which she seeks reimbursement. As requested by the parties, they will continue to separately negotiate and be responsible for their respective portions of their debt to the Internal Revenue Service.

In sum, of the five items of marital property at issue, the court will award the Petersburg property and the partnership interests to Dr. Masri. The Colonial Heights property, The Equitable Companies stock, and Dr. Masri's IRA will be awarded to Ms. Masri. Dr. Masri will also be ordered to make a monetary payment to Ms. Masri in the amount of $10,626.00.

## II. *Spousal Support*

By order entered May 21, 1998, the court ordered Dr. Masri to pay *pendente lite* spousal support of $500.00 per month. This was done even though Dr. Masri was not working, the court imputing income to him of $40,000.00 per year. Ms. Masri now asks the court to order permanent spousal support of $750.00 a month.

Dr. Masri is still unemployed, even though his medical license was reinstated in October 1998. His only income is from his IRA, which has now been awarded to Ms. Masri, and personal loans from friends. He claims total monthly living expenses of $1,740.00. He owes $120,000.00 to Trigon Blue Cross/Blue Shield as restitution in his criminal case, $150,000.00 in bank loans, and approximately $220,000.00 to the Internal Revenue Service. He also owes $27,000.00 to lawyers and accountants and claims to owe another $46,000.00 to friends for personal loans. In all, his total debts are $563,000.00. Even if the loans from friends are excluded, Ms. Masri claiming that they are not real loans, Dr. Masri is $517,000.00 in debt.

Ms. Masri earns $4,836.00 a month from her job at Central State Hospital, which is $3,089.58 after taxes, and another $1,000.00 to $1,200.00 a month from a part-time job at Poplar Springs Hospital. Her monthly expenses are $4,060.00. She also has a debt with IRS, which she and her attorney hope can be resolved for something less than $40,000.00, but there is no guarantee that it can be. Based on all of these facts, Dr. Masri will not be ordered to pay permanent spousal support.

As the court has already said with regard to equitable distribution, it is not the purpose of spousal support to punish a guilty spouse. If it were, Dr. Masri would be ordered to pay something. Instead, the purpose of spousal support is to maintain the payee-spouse, so far as the paying spouse is able, in the manner to which the payee-spouse was accustomed during the marriage. *Gamble v. Gamble*, 14 Va. App. 558, 573-74, 421 S.E.2d 635 (1992). Thus, in determining whether support should be ordered, the court must look not only at the financial needs of the requesting spouse, but also at the ability of the proposed payor to pay. Dr. Masri simply has no ability to pay.

As already noted, when the court ordered *pendente lite* support in May 1998, it imputed income to Dr. Masri of $40,000.00 a year. This was because the court was not satisfied that Dr. Masri had made sufficient attempts to find a job suitable to his qualifications even though his medical license was suspended. The court is still not satisfied that he has made every effort to find a job. The fact is, however, that even if the court continued to impute income to Dr. Masri and even if the court imputed more income to Dr. Masri than it did in May, he still does not have the resources to pay permanent spousal support. His monthly living expenses of $1,740.00, plus his outstanding debt of at least $517,000.00 prevent the court from ordering him to pay monthly support to Ms. Masri. Moreover, Ms. Masri's net monthly income of more than $4,000.00 is sufficient to pay her monthly living expenses, and the money she will get from Dr. Masri's IRA and stock will enable her to pay her share of the

IRS bill and any other debt she has. Thus, while the court recognizes that based on the evidence, Ms. Masri is completely blameless in the breakup of the parties' marriage and while the actions of Dr. Masri evoke no sympathy for him at all, the court will not order Dr. Masri to pay permanent support, and the *pendente lite* order is terminated as of December 31, 1998. Of course, the court makes no ruling on Ms. Masri's ability to seek spousal support in the future. See, e.g., *Bacon v. Bacon*, 3 Va. App. 484, 490-91, 351 S.E.2d 37 (1986).

### III. *Attorney's Fees and Costs*

Ms. Masri also asks the court to award her attorney's fees and costs, which total $7,915.35. Such an award is always left to the sound discretion of the court. See, e.g., *Ingram v. Ingram*, 217 Va. 27, 29, 225 S.E.2d 362 (1976); *Alphin v. Alphin*, 15 Va. App. 395, 406, 424 S.E.2d 572 (1992). The court will award fees and costs here.

The court will not repeat what it has already said about the history of these parties' marriage and why it feels that Dr. Masri is totally responsible for its demise. The court also will not repeat what it has already said about the unfortunate state of Dr. Masri's finances. Were he able to do so, Dr. Masri would be ordered to pay all of Ms. Masri's attorney's fees and costs. Instead, the court will order him to pay one-half of her fees and costs: $3,958.00.

### IV. *Contempt*

Finally, Ms. Masri asks the court to hold Dr. Masri in contempt for not complying with the order of May 21, 1998, ordering Dr. Masri to pay $500.00 a month in spousal support. While the court is not convinced that Dr. Masri has taken all reasonable steps to find employment, the court is encouraged by the fact that he has now regained his medical license. The court will give him one final chance to comply with its order.

Ms. Masri's motion to have Dr. Masri held in contempt is taken under advisement for a period of ninety days. At the end of that time, counsel are directed to schedule another hearing to present further evidence on the motion or, if Dr. Masri has by then complied with the order and at Ms. Masri's election, submit a sketch of an order dismissing the show cause petition and removing this case from the court's active docket. The court reminds Dr. Masri that his IRA has now been awarded to Ms. Masri. No part of it can be used to pay delinquent spousal support.

April 1, 1999

In a letter opinion dated January 4, 1999, the court rendered its decision regarding the equitable distribution of the five items of marital property in dispute between the parties. An office building in Petersburg, which Dr. Masri owns with two other doctors, and the parties' interest in three partnerships were awarded to Dr. Masri. Four acres of land in Colonial Heights, 25.607 shares of stock in The Equitable Companies, and all of Dr. Masri's IRA were awarded to Ms. Masri. In a footnote to the opinion, the court noted Dr. Masri's counsel's representation at the equitable distribution hearing that Trigon Blue Cross/Blue Shield, one of the victims of Dr. Masri's criminal fraud, the particulars of which are set out in the January 4 opinion and will not be repeated here, claimed that it was entitled to all or a portion of Dr. Masri's IRA under an order of restitution in Dr. Masri's criminal case. The court then stated:

> The court, however, has been unable to find any authority for the proposition that an order of restitution in a criminal case creates a lien on any specific property of the defendant. Thus, and while Dr. Masri may be under an order to pay Trigon a specific sum of money as part of his criminal sentence or as a condition of his probation, Trigon cannot prevent this court from distributing any specific item of Dr. Masri's property.

*Supra* n. 1.

Subsequently, Trigon filed a motion to intervene and for a rehearing and reconsideration. A rehearing was held on March 9. The court now believes that its earlier ruling on Trigon's claim was erroneous.

As Trigon points out, federal law 18 U.S.C. § 3663(m)(1)(B) provides:

> At the request of a victim named in a restitution order, the clerk of the court shall issue an abstract of judgment certifying that a judgment has been entered in favor of such victim in the amount specified in the restitution order. Upon registering, recording, docketing, or indexing such abstract in accordance with the rules and requirements relating to judgments of the court of the State where the district court is located, *the abstract shall be a lien on the property of the defendant located in such State in the same manner and to the same extent and*

*under the same conditions as a judgment of a court of general jurisdiction in that State.*

Emphasis added.

Trigon docketed its abstract of judgment in connection with Dr. Masri's restitution order in the Circuit Courts of the County of Henrico, the City of Colonial Heights, the County of Chesterfield, and the City of Petersburg in or before November 1998. On November 12, 1998, Trigon obtained a garnishment summons from the Henrico Circuit Court and had it served on Dr. Masri's counsel, who was holding the IRA funds now at issue. In addition, debtor interrogatories were taken of Dr. Masri in October 1998 at which Dr. Masri was asked if he owned any stock. He said he did not. Actually, he owned the Equitable stock also at issue here. Trigon argues that had Dr. Masri answered the question truthfully, Trigon would have also sought execution of its judgment on the stock. In sum, it is Trigon's position that it has a valid lien on each of the items of property awarded to Ms. Masri in the January opinion letter and that, as a result, the award should be set aside. As already indicated, the court must agree.

It is elementary that a divorce court has no power to affect a valid lien of a third party on marital property. The court may adjust the parties' interest in real and personal property, but liens and interests of others are beyond the reach of the court in equitable distribution proceedings. Indeed, "[w]hen a legitimate debt is secured by a valid encumbrance on marital property, the amount of the indebtedness must be deducted from the gross value of the property to determine the net value for purposes of equitable distribution." *Marion v. Marion*, 11 Va. App. 659, 667, 401 S.E.2d 432 (1991), *quoting Trivett v. Trivett*, 7 Va. App. 148, 152, 371 S.E.2d 560 (1988). Here, Trigon has a valid encumbrance on all of the property at issue, including the property that the court intended to award to Ms. Masri. The court was wrong to award it without regard to Trigon's lien.

Dr. Masri takes no position on Trigon's claim. Ms. Masri does. While conceding that Trigon has a valid lien on the Colonial Heights property and the Equitable stock, she argues that Trigon does not have a lien on the IRA or that whatever lien exists is subordinate to her interest in it. Her argument is based on an order of this court entered May 21, 1998, which prevented Dr. Masri from spending any of the IRA without Ms. Masri's consent. This, according to Ms. Masri, precluded any third party from acquiring a lien on the IRA or, in the alternative, effectively constituted a prior lien on it. Ms. Masri, however, has presented no authority for her position, and the court has been unable to

14

find any. In any event, the court does not believe that potential liens of third parties are defeated by simply entering an order preventing a party to a divorce proceeding from disposing of marital assets, which is what the order at issue did. It also created no lien. Trigon's lien is valid and takes priority over the court's earlier award.

Having now held that all of the marital property is subject to Trigon's lien, it is obvious that the distribution of the property contemplated in the January opinion letter must be adjusted. If Dr. and Ms. Masri can do so by agreement which, of course, will be without waiving their right to object to the holding just made, they are encouraged to do so. If they cannot agree, the court directs each side to submit a short memorandum setting forth a suggested scheme of distribution based on the court's findings in this opinion and in its earlier one. Trigon's lien will be recognized in whatever final order is entered.