COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Beales and AtLee
Argued at Richmond, Virginia


JEROME MYERS, II

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0943-19-2                      JUDGE RICHARD Y. ATLEE, JR.
                                                         APRIL 14, 2020
JANETTA KATRECE MYERS


               FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                           David E. Johnson, Judge

               Jerrell "Jay" Williams (The Law Office of J. Williams, PLC, on
               briefs), for appellant.

               Brandy M. Poss (Barnes & Diehl, P.C., on brief), for appellee.


        The Circuit Court of Chesterfield County entered a final decree of divorce on the grounds

of desertion between Jerome Myers, II ("husband") and Janetta Katrece Myers ("wife").[1]

Husband argues on appeal that the circuit court erred in (1) qualifying vocational rehabilitation

counselor Gray Broughton as an expert and admitting his report and testimony; (2) its calculation

and award of spousal support to wife;[2] (3) its calculation of child support; (4) its application of

Code § 20-107.1(E)(13) and Pub. L. 115-97 § 11051; (5) failing to limit husband's obligation to

maintain life insurance policies; (6) characterizing a Morgan Stanley brokerage account as

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We recognize that "former husband" and "former wife" are more accurate designations, but we use less cumbersome titles in this memorandum opinion for ease of reference.

[2] For ease of discussion, this Court has consolidated four of husband's assignments of error, which individually were that the circuit court erred in:  not imputing income to wife for purposes of support, imputing income to husband, the amount of spousal support it awarded to wife, and its application of Srinivasan v. Srinivasan, 10 Va. App. 728 (1990).

marital property precluding the finding that $130,000 of the equity in the marital residence was traceable to husband's separate funds in that account; (7) finding it was not provided sufficient evidence to value wife's Dominion pension and not finding such funds to be marital property and subject to distribution to husband; and (8) classifying debt from a personal loan as marital property.

Wife also assigns cross-errors. She argues that the trial court erred in (1) failing to make child support retroactive to the date she filed her support petition in the juvenile and domestic relations district ("J&DR") court; and (2) its calculation of retroactive child support as it included spousal support she did not receive as part of her income. Finally, both parties request an award for attorneys' fees and costs incurred in responding to the other party's assigned errors.

## I. BACKGROUND

"[W]e view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Congdon v. Congdon, 40 Va. App. 255, 258 (2003).

The parties married on December 8, 2006. They have two minor children who were ages six and eight at the time of trial. In August 2016, husband moved to North Carolina to live with another woman. The parties formally separated in December 2016. Husband filed for divorce on the grounds of having lived separate and apart for over a year. Wife filed an answer and counterclaim seeking a divorce on the grounds of desertion. The circuit court found it "uncontroverted that [wife] would not see her husband for days, almost always without explanation" and that beginning in 2014, he frequently made "non-work related trips, frequently involving a party of the opposite sex." It ultimately granted the divorce on the grounds of desertion. Code § 20-91(a)(6).

During the marriage, husband was the primary breadwinner, working as an engineer for a company named MasTec. Wife was the children's primary caregiver, and she maintained

part-time work with Dominion.  Wife earned $34.90 an hour, totaling $39,898.92 in 2016 and $44,752.70 in 2017.  Husband's W-2s show he earned $121,009 in 2015 and $165,089 in 2016.  MasTec laid husband off in December 2016.  Before that occurred, however, husband had planned to quit upon receiving his bonus in early 2017.  He intended to work for himself under the name Myers Development Group, providing asset management and life coaching.  After leaving MasTec, he did just that.  At the time of trial, Myers Development Group had yet to make a profit.  Husband did not obtain other employment.

After viewing the evidence, including the parties' past earnings and earning potential, the circuit court found husband was voluntarily underemployed and ordered husband to pay wife $3,500 a month in spousal support for a period of six years.  It also ordered husband to pay $1,635 per month in child support.  It designated properties and debts as separate or marital property and equitably distributed each marital asset accordingly (to the extent that specific assets are at issue on appeal, we will detail them in the analysis).  It concluded that it was not provided adequate information about either party's Dominion pension, and distributed each pension 100% to the party in whose name it was titled.  It required that husband maintain life insurance accounts for the benefit of the children.  The circuit court entered the final decree of divorce, on grounds of desertion, on May 22, 2019.  This appeal followed.

II.  ANALYSIS

A.  Broughton's Report and Expert Testimony

Husband argues that the circuit court "erred in not striking the testimony of Mr. Gray Broughton, ruling that Mr. Broughton was qualified to testify as an expert, permitting Mr. Gray Broughton to testify as an expert, and in considering, giving any weight to, admitting into evidence, and not striking Mr. Broughton's report."

- 3 -

At trial, wife called Broughton, a vocational rehabilitation counselor and vocational expert with at least thirty-six years of experience. He explained that he had appeared as an expert and testified in court in several hundred cases. In this case, he was called to offer his expert opinion on husband's "employability, plac[e]ability and earning capacity" at the time of trial. Husband's counsel conducted an extensive *voir dire* attempting to show Broughton lacked adequate familiarity with husband's area of expertise — engineering project management in the power industry. Broughton explained that he had handled at least one matter involving a manager in the power industry and many more involving individuals in project management. Ultimately, the circuit court overruled husband's objection to qualifying Broughton as an expert, finding that "Broughton will assist the fact finder," but noting that "[t]he weight that I'll give it will depend on what I hear and as I apply it will be a different issue."

"The issue whether a [potential] witness is qualified to testify as an expert on a given subject is a matter submitted to the trial court's discretion, and the trial court's ruling in this regard will not be disturbed on appeal unless it plainly appears that the witness was not qualified." Velazquez v. Commonwealth, 263 Va. 95, 104 (2002) (alteration in original) (quoting Johnson v. Commonwealth, 259 Va. 654, 679 (2000)). Here, Broughton testified that he had extensive experience working as a vocational counselor and testifying as an expert about individuals' earning capacities. He had consulted in hundreds of cases, and he prepared his report considering husband's education, experience, interests, and location, considering positions that were currently available. In overruling husband's objection to admitting Broughton as an expert, the circuit court was clear that it would appropriately weigh Broughton's testimony. From the record, it does not plainly appear that Broughton was unqualified to testify as to husband's employability and earning capacity. Accordingly, the circuit court did not err in qualifying Broughton as an expert.

Husband also argues that the circuit court "erred in not striking the testimony of Mr. Gray Broughton" and in "considering, giving any weight to, admitting into evidence, and not striking Mr. Broughton's report." Husband failed to adequately preserve these objections before the circuit court. Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." "The purpose of the rule is to allow the trial court to cure any error called to its attention, thereby avoiding unnecessary appeals and retrials." Herring v. Herring, 33 Va. App. 281, 286 (2000).

Here, husband did not object to the admission of Broughton's expert report. He also failed to make any specific objection to Broughton's testimony. Husband's trial counsel merely said "I move to strike his expert testimony" after Broughton was dismissed, without any further explanation. The circuit court denied the motion. Throughout Broughton's testimony, including his explanation of his methodology that led to his expert conclusion that husband could earn at least $121,000 a year in the Greensboro, NC area, husband failed to object. Husband has not satisfied the criteria to meet the good cause or ends of justice exceptions. Accordingly, he failed to preserve these objections for review on appeal, and these issues are waived.

### B. Awards of Child and Spousal Support and Imputation of Income

Husband next argues that the circuit court erred in: calculating spousal and child support by not imputing income to wife because she did not pursue full-time work, imputing income to him based on Broughton's testimony about his earning capacity, the amount of spousal support it granted wife, and its application of Srinivasan v. Srinivasan, 10 Va. App. 728 (1990). He ostensibly limits his arguments regarding imputed income to the award of child support, as he states that the circuit court did not impute income for purposes of spousal support. Yet in its

written ruling, in the portion concerning spousal support, the circuit court stated that it found that husband was "voluntary underemployed, and unemployed,[3] and is capable of earning more income than is presently reported," a finding that is only relevant if imputing income. Moreover, husband's arguments regarding imputation include citations and argument about cases that concern spousal, not child, support. With those various confusions noted, this Court will attempt to clarify the issues and address them cohesively.

"Whether and how much spousal support will be awarded is a matter of discretion for the trial court." Barker v. Barker, 27 Va. App. 519, 527 (1998). "The court, in determining whether to award support and maintenance for a spouse, shall consider the circumstances and factors which contributed to the dissolution of the marriage, specifically including adultery . . . ." Code § 20-107.1(E).

> In Virginia, when "a claim for support is made by a party who has been held blameless for the marital breach, the law imposes upon the other party a duty, within the limits of his or her financial ability, to maintain the blameless party according to the station in life to which that party was accustomed during the marriage."

Brandau v. Brandau, 52 Va. App. 632, 637 (2008) (quoting Gamble v. Gamble, 14 Va. App. 558, 573-74 (1992)). "In determining 'the nature, amount and duration of an award,' the court must consider twelve specific statutory factors as well as any other concern 'necessary to consider the equities between the parties.'" Id. at 638 (quoting Code § 20-107.1(E)). "Whether to impute income to a spouse seeking support is simply one component of calculating the 'amount' of support under the statutory factors listed in Code § 20-107.1(E)." Id.

---

[3] One of husband's arguments is that, because the terms unemployed and underemployed are "mutually exclusive," the circuit court's ruling was plainly wrong. While we agree that, theoretically speaking, that is true, the nature of husband's self-employment and his failure to draw a salary or turn a profit from Myers Development Group make the circuit court's conclusion that he could be accurately described by either term reasonable.

- 6 -

In its written ruling, the circuit court expressly examined all thirteen factors listed in Code § 20-107.1(E). It found an award of spousal support to wife was appropriate because "(1) the amount is necessary to support [wife] as she transitions into full-time employment while still being the primary caregiver for two children; and (2) the duration of the marriage and reasons for the dissolution of the marriage[, husband's adultery and desertion]." It awarded wife $3,500 a month for six years.

Husband argues that because our Court has said that "one who *seeks* spousal support is obligated to earn as much as he or she reasonably can to reduce the amount of the support need," Srinivasan, 10 Va. App. at 734 (emphasis added), the circuit court erred in imputing income to him and not to wife, as she was the party seeking spousal support. He claims that the circuit court misapplied the rule in Srinivasan by fashioning a spousal support award that imposed upon him the obligation to earn as much as he reasonably could, when he believes Srinivasan places that burden only on the party seeking support. It is true that the facts in Srinivasan concerned imputing income to a spouse seeking support, but it does not stand for the proposition that a court may *only* impute income to the spouse seeking support. Rather,

> [t]he burden is on the party seeking the imputation to prove that the other parent was voluntarily foregoing more gainful employment, either by producing evidence of a higher-paying former job or by showing that more lucrative work was currently available. The evidence must be sufficient to enable the trial judge reasonably to project what amount could be anticipated.

Joynes v. Payne, 36 Va. App. 401, 421 (2001) (quoting Niemiec v. Commonwealth, Dep't of Soc. Servs., 27 Va. App. 446, 451 (1998)). That is precisely what took place here. Husband's W-2s show he earned $121,009 in 2015 and $165,089 in 2016. Wife presented expert testimony that husband was capable of earning at least $121,000 a year, and the circuit court found that testimony credible over husband's assertions that he was "priced out of the market." In concluding that husband was voluntarily underemployed or unemployed, the circuit court

concluded that husband "decided to leave MasTec, but was subsequently let go at the completion of a contract job." It noted that husband "testified that he wants to grow Myers Development Group and is not interested in joining another company." Thus, it found that husband had not made a good faith effort to secure gainful employment since being let go from MasTec and was capable of earning more income than he reported. Upon concluding that husband was voluntarily underemployed, the circuit court decided to impute a full-time salary to husband. The circuit court did not err in so ruling.

The circuit court also declined to impute a full-time salary to wife, who continued to work approximately twenty hours a week. Husband argues that this was error, as wife was obligated to earn as much as possible, as she was the party seeking support. At trial, he presented testimony from wife's employer that she could work full-time. He argues that, for purposes of child support, the circuit court was required to consider the "good faith and reasonableness," Murphy v. Murphy, 65 Va. App. 581, 591 (2015) (quoting Code § 20-108.1(B)(3)), of her decision to remain "underemployed," which he asserts was not done in good faith and was not reasonable. Therefore, under husband's rationale, the circuit court erred in not imputing a full-time salary to wife and it should have calculated her income as twice her actual earnings.

The circuit court specifically found "that the parties made a joint decision for [wife] to leave the workforce upon the birth of the parties' first child. [Wife] testified that she had an opportunity to pursue a Ph.D. at Purdue University but 'did not for the benefit of the family.'" It also noted that she was "the primary caregiver for two children" who were only six and eight at the time of trial. These certainly speak to the good faith and reasonableness of her decision to not pursue full-time employment. Moreover, she did not reduce her hours in an effort to avoid paying or to receive more support from husband; she continued to work the same amount as she

had prior to the parties' separation.  Choosing to continue to work part time is not *de facto* a choice to be voluntarily underemployed.  As such, we cannot say the circuit court abused its discretion when it decided not to impute a full-time salary to wife.

For the foregoing reasons, the circuit court did not abuse its discretion in deciding to award spousal support to wife.  It carefully considered all of the factors under Code § 20-107.1(E), including "the relative needs and abilities of the parties," Joynes, 36 Va. App. at 419, and its findings of fact were not plainly wrong or unsupported by the evidence.  It did not err in crediting the testimony of Broughton over husband's evidence.  See Perkins v. Commonwealth, 31 Va. App. 326, 331 (2000) (noting that the finder of fact, "who determines the credibility of the witnesses and the weight accorded their testimony, may accept or reject the testimony in whole or in part").  It also did not abuse its discretion in its decision to impute income to husband, or in declining to impute income to wife, for purposes of calculating child or spousal support.  We find no error in these decisions of the circuit court regarding support.

### C.  Child Support Calculation

Husband also argues that the circuit court erred in calculating child support because it "failed to determine the presumptive amount of child support before deviating therefrom with imputed income" and it "failed to state why the application of the guidelines would be unjust or inappropriate . . . ."  As he conceded at oral argument, husband failed to preserve these arguments.  He failed to raise these issues in his objection to the child support award.  He only argued that that the circuit court "erred in its calculation of child support by failing to account for [h]usband's spousal support obligations, income the [sic] should have been imputed to [w]ife, and [h]usband's actual income instead of the income was, but should not have been, imputed to [h]usband."

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18. Known as the contemporaneous objection rule, it "require[s] that objections be promptly brought to the attention of the trial court with sufficient specificity that the alleged error can be dealt with and timely addressed and corrected when necessary." Brown v. Commonwealth, 8 Va. App. 126, 131 (1989). Husband's objections to the child support award to do not encompass the arguments he makes to this Court. The circumstances also do not support the application of the good cause or ends of justice exceptions. Accordingly, these arguments are waived.

### D. Tax Consequences of Spousal Support

In its written ruling, the circuit court noted that it had considered all necessary factors, "including that any spousal support awarded will be taxable to the payee spouse and deductible by the payor spouse for federal income tax purposes. (Factor 13)." "Factor 13" refers to Code § 20-107.1(E)(13), which requires a court to consider "the tax consequences to each party and the circumstances and factors that contributed to the dissolution."

Pub. L. 115-97 § 11051 concerns the "repeal of [the] deduction for alimony payments." It amended the tax code so that, for divorce decrees entered after January 1, 2019, spouses paying alimony no longer may deduct such payments. These amendments were not in effect at the time the circuit court issued its written ruling on November 5, 2018. Pub. L. 115-97 § 11051 states:

> The amendments made by this section shall apply to--
>     (1) any divorce or separation instrument . . . executed after December 31, 2018, and
>     (2) any divorce or separation instrument . . . executed on or before such date and modified after such date if the modification expressly provides that the amendments made by this section apply to such modification.

- 10 -

As such, the circuit court correctly stated the law that was in effect at the time of its written ruling. Husband brought the issue to the circuit court's attention by objecting to that language in his motion to reconsider, noting that the final decree would go into effect after December 31, 2018 and thus the tax liabilities would change. Yet he did not request a rehearing or an opportunity to present evidence of the tax consequences of this amendment. The circuit court had no evidence to consider about the tax effects of the deductibility of spousal support payments in this matter. Moreover, being on notice of the amendments to the tax code, the circuit court nonetheless denied husband's request to amend the award of spousal support before entering the final decree of divorce. As such, we cannot say the circuit court erred by correctly stating the law as it stood at the time of its written ruling, or in declining to amend its award of spousal support without any evidence, or any request to present evidence, on the effect of the tax code amendments before it entered the final decree.

### E. Life Insurance

Husband next argues that the circuit court erred in failing to place a time limit on how long he must maintain life insurance policies for the benefit of the parties' children. He did not raise this objection before the circuit court. His objection was that the "[c]ourt erred in ordering [h]usband to maintain life insurance policies, when the undisputed and unchallenged evidence indicates that the premiums for the insurance policies were historically paid from the Morgan Stanley Brokerage Account, not from Husband's income." This objection does not encompass the argument he presents on appeal. Because he failed to raise this objection before the circuit court, it is waived. See Rule 5A:18.

### F. Morgan Stanley Brokerage Account

Husband argues that he provided $130,000 of the $140,000 down payment for the purchase of the parties' marital home and that the source of his contribution was his separate

property held in a joint Morgan Stanley brokerage account. He asserts that the Morgan Stanley brokerage account is not marital property, despite being in an account with both his and wife's names on it, because the funds in that account were obtained prior to the marriage from a personal injury settlement. He therefore argues that his share in the value of the home should be larger to reflect that fact and thus the home should have been classified as hybrid, not marital.

The circuit court found that to the extent that the funds in this account were husband's separate property, it became marital when he placed them in their joint account. Husband failed to provide any evidence, aside from his own uncorroborated testimony, that supported his assertion that the money in the account was traceable to his separate funds. The circuit court instead found sufficient evidence that it was a gift.[4] Its finding was not plainly wrong.

### G. Dominion Pension

Husband alleges that the circuit court erred in finding that it was not provided sufficient evidence to value wife's Dominion pension and awarding its full value to wife. He argues it should have found the account to be marital property and subject to distribution to husband. He fails to mention that the circuit court in fact also found insufficient evidence as to the value of husband's Dominion pension and awarded it 100% to him. Finally, husband's argument is based

---

[4] In support of this finding, the circuit court explained that

> (1) a joint account was established not once, but twice; (2) the funds were not deposited until the parties married; (3) [wife] exercised an absolute veto over whether any funds could be withdrawn from the account; (4) the account was structured with a survivorship interest for the spouses; (5) [wife] signed the necessary documents to establish the joint account; (6) both parties participated in financial planning, which included management of this account; (7) the account remains jointly titled; (8) [wife] accepted the gift; and, (9) [wife] testified that the funds were for the parties' future.

It noted that there were conflicts in the testimony, but expressly found wife to be more credible.

on the mistaken premise that the circuit court found the pensions to be separate property. Instead, the court distributed each pension 100% to the party in whose name it was titled.

"On appeal, 'decisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed unless plainly wrong or unsupported by the evidence.'" Layman v. Layman, 62 Va. App. 134, 137 (2013) (quoting McDavid v. McDavid, 19 Va. App. 406, 407-08 (1994)). Here, wife requested that each party keep their own pension, as she believed they were close in value and dividing them would be a "wash." On appeal, husband requests that this Court reverse and order the circuit court to award him 50%, or "an equitable percentage," of wife's pension. But "Virginia law does not establish a presumption of equal distribution of marital assets." Matthews v. Matthews, 26 Va. App. 638, 645 (1998). Husband fails to note anywhere in the record where the value of these pensions is presented or provide any authority explaining why the circuit court was mistaken in deciding, considering all the necessary factors, to award each party the full value of their own pension. As such, we find no error.

### H. Personal Loan

Finally, husband argues that the circuit court erred by classifying debt from a personal loan as marital property. The evidence shows that wife borrowed money from her sister (the "Tierney Thomas debt") to pay for attorneys' fees after the parties separated. The circuit court classified the debt as marital and valued it at $11,000. It distributed the debt 75% to husband and 25% to wife. Debt is presumed separate if it is incurred "after the date of the last separation of the parties," but "to the extent that a party can show by a preponderance of the evidence that the debt was incurred for the benefit of the marriage or family, the court may designate the debt as marital." Code § 20-107.3(4).

"On appeal, 'decisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence.'" Wroblewski v. Russell, 63 Va. App. 468, 487 (2014) (quoting McDavid, 19 Va. App. at 407-08). This Court has held that a party spending marital funds on attorneys' fees in divorce litigation does not necessarily constitute waste and can constitute a "valid marital purpose." Decker v. Decker, 17 Va. App. 12, 19 (1993) (finding that debt incurred after separation was a valid marital purpose, specifically noting that expenditure of funds for items such as living expenses, support, and attorney's fees, constitutes a valid marital purpose); see also Thomas v. Thomas, 40 Va. App. 639, 645 (2003) ("We have held consistently, however, that the expenditure of marital funds for items such as voluntary support, living expenses, attorney's fees, and other necessities of life constitutes a valid marital purpose and is not waste."); Amburn v. Amburn, 13 Va. App. 661, 667 (1992) (finding no waste where wife spent marital funds on divorce attorneys' fees).

Here, wife, the defendant in the divorce action, required the assistance of counsel in litigation, and she secured funds from a family member to pay her attorneys. Although incurring debt and spending marital funds are distinct, our precedent is clear that paying for attorneys in divorce litigation can constitute a "valid marital purpose." In this case, the trial court appears to have implicitly found that the loan was incurred for the benefit of the family and there is sufficient evidence in the record to support such a finding. Based on the record, we cannot say that the circuit court's implicit conclusion that this debt was incurred for the benefit of the family was plainly wrong or without evidence to support it and, as such, we find no error in the circuit court's classification of the debt as marital.

## I. Wife's Assignments of Cross-error

Wife assigns two cross-errors. First, she argues the circuit court erred by failing to make child support retroactive to the date she filed her support petition, and in its calculation of retroactive child support as it included spousal support she did not receive as part of her income.

### 1. *Date of Child Support Retroactivity*

Wife argues that the circuit court erred in ordering that child support was retroactive to the date the divorce proceeding commenced in the circuit court (January 30, 2018), not the date wife filed a petition for child support in the J&DR court (September 29, 2017). Wife's petition for child support was dismissed by the J&DR court upon husband's filing of the divorce action. Wife appealed this dismissal to the circuit court. The circuit court granted wife's motion to join her petitions before the J&DR court with the divorce matter on May 29, 2018, and removed the docket call date for her appeal of those dismissals.

Under Code § 20-108.1(B), "[l]iability for support shall be determined retroactively for the period measured from the date that the proceeding was commenced by the filing of an action with any court provided the complainant exercised due diligence in the service of the respondent . . . ."; see also Cirrito v. Cirrito, 44 Va. App. 287, 310 (2004) (finding the trial court erred in not making child support payments retroactive to the date of filing the original bill of complaint – the commencement of the proceeding – in the trial court). Wife argues that, because she first filed a petition for child support before the J&DR court on September 29, 2017, retroactive child support should be calculated using that date.

Here, the circuit court had before it a divorce proceeding requesting it to adjudicate support, filed January 30, 2018. By granting wife's request to merge her dismissed petitions from J&DR court into the matter before it, it did not effectively mean the case now originated with her filing petitions in the lower court. The proceeding at hand commenced with the filing of

- 15 -

a complaint in the circuit court.[5]  Accordingly, the circuit court did not err in following the language of Code § 20-108.1(B) and ruling that support be retroactive to January 30, 2018.

## 2. *Calculating Retroactive Child Support*

Wife also argues that the circuit court erred by including $3,500 a month in spousal support as part of wife's income when calculating retroactive child support.  We agree.

In assessing a party's income for a child support calculation, "spousal support received shall be included in gross income and spousal support paid shall be deducted from gross income when paid pursuant to an order or written agreement."  Code § 20-108.2.  "In cases in which retroactive liability for support is being determined, the court or administrative agency may use the gross monthly income of the parties averaged over the period of retroactivity."  Id.

Here, the circuit court's award of spousal support was effective as of December 1, 2018. The final decree, however, set child support at $1,635 a month, including the $3,500 in spousal support as part of wife's income, and made that amount retroactive to January 30, 2018.  Wife's income between January 30, 2018 and December 1, 2018, did not include the $3,500 a month in spousal support, as it had not yet been ordered.  Wife did not receive *pendente lite* spousal support, and thus it was error for the circuit court to include spousal support as part of her income in its child support calculation.

---

[5] Moreover, the circuit court could have concluded that wife failed to provide an adequate record on appeal to support her argument that the proceeding commenced on September 29, 2017, as the record contains no copy of wife's petitions before the J&DR court and no support for that date of filing beyond her own testimony.  The party assigning error "has the responsibility of providing the record on appeal necessary to enable the reviewing court to address the issues."  Bunton v. Commonwealth, 6 Va. App. 557, 561 (1988); see also Prince Seating Corp. v. Rabideau, 275 Va. 468, 470 (2008) (holding that an appellant "has the primary responsibility of presenting to [the c]ourt, as a part of the printed record, the evidence introduced in the lower court, or so much thereof as is necessary and sufficient for us to give full consideration to the assignment of error" (quoting Lawrence v. Nelson, 200 Va. 597, 598-99 (1959))).  Absent any explanation for its ruling, the circuit court here could have found that wife failed to provide an adequate record on appeal.

J.  <u>Attorneys' Fees</u>

Wife requests an award for attorneys' fees and costs incurred in responding to this appeal, and husband requests an award of fees incurred in responding to wife's assignments of cross-error.  <u>See</u> <u>O'Loughlin v. O'Loughlin</u>, 23 Va. App. 690, 695 (1996).  On consideration of the record before us, we decline to award either party attorneys' fees or costs on appeal.

III.  CONCLUSION

The matter is affirmed on all issues except wife's assignment of cross-error regarding spousal support payments she never received being counted as income in calculating retroactive child support.  On that issue, the case is reversed and remanded for the circuit court to enter an amended final decree consistent with the mandate of this opinion.

<u>Affirmed in part; reversed and remanded in part.</u>